In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-1625 and 99-1636

In re:  Rimsat, Limited,

Debtor,

Appeals of:  Kauthar Sdn Bhd, et al.

Appeals from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
Nos. 1:98cv363 and 1:98cv370--William C. Lee, Chief Judge.

Argued February 22, 2000--Decided May 18, 2000

Before Coffey, Easterbrook, and Williams, Circuit
Judges.

Williams, Circuit Judge.  Kauthar Sdn Bhd and
three of its former attorneys, Daniel Voelker,
William Howard, and William Factor, seek review
of a bankruptcy court order sanctioning them for
improper conduct during a bankruptcy proceeding.
For various reasons, the appellants contend that
the sanctions order must be reversed. Because the
bankruptcy court committed no reversible error in
sanctioning the appellants, however, we affirm.

I

Kauthar Sdn Bhd is a Malaysian entity that
invested a substantial sum of money in Rimsat,
Ltd., a firm that planned to provide satellite
service to the Pacific Rim using satellite rights
allotted to the island nation of Tonga and
controlled by Tongasat, a Tongan company.
However, Rimsat ran into financial trouble and
filed for bankruptcy. Tongasat and Rimsat
attempted to settle their claims against each
other on two occasions, but Kauthar objected to
both of the proposed compromises contending that
Tongasat was being let off too easy, to the
detriment of Kauthar's investment in Rimsat. In
contesting the Tongasat/Rimsat compromises,
Kauthar's attorneys pursued an aggressive
litigation strategy to force a more favorable
settlement plan. Their strategy earned them at
least one warning from the bankruptcy judge about
unnecessary and purely strategic litigiousness
before the events leading up to the bankruptcy

judge's ultimate decision to sanction them.

In challenging the second proposed Tongasat/Rimsat compromise, Kauthar sought to depose a number of individuals associated with Tongasat, including the Princess of Tonga, who chaired Tongasat's Board of Directors, and Edward Lau, Tongasat's outside general counsel and its deposition designee. Tongasat filed a motion for a protective order and the bankruptcy court held a hearing on the matter. At the hearing, the bankruptcy judge expressed concern that Kauthar's discovery requests had gone beyond the limited scope relevant to the compromise and ruled that Kauthar could only depose one person from Tongasat. William Factor, who represented Kauthar at the hearing, informed the court that Kauthar would choose to depose the Princess. Tongasat objected on the ground that the Princess lacked personal knowledge regarding the disputed issues. With the understanding that the Princess would submit an affidavit attesting to her lack of personal knowledge, the bankruptcy judge ruled that Kauthar would have to depose someone else, and on Kauthar's behalf, Factor selected Edward Lau. Kauthar's attorneys then filed a motion to compel the deposition of the Princess asserting that the Princess had personal knowledge of disputed issues.

Meanwhile, Daniel Voelker and William Howard represented Kauthar at Lau's deposition. Voelker, who conducted the deposition, focused his inquires on whether Lau believed he could disclose information he had acquired from the Princess. Dissatisfied with Lau's refusal to answer yes or no in general to these inquires, Voelker began to argue with and ask harassing questions of Lau. For instance, at one point, he asked Lau, "In the conversation you had in August of 1995, what did the Princess say to you, and what did you say to her? I want to know everything she said to you, Mr. Lau, every single word she uttered?" Voelker then began to bicker with Lau and Lau's counsel, implying that Lau intended to be dishonest in answering and intended to improperly invoke attorney-client privilege when he asked, "Are you going to answer [my question] fully and completely and honestly, or are you going to selectively answer the question and assert in your own mind, Mr. Lau, the attorney-client privilege?" Unable to get the answers he wanted regarding Lau's ability to disclose information acquired from the Princess and claiming that Lau was not a proper deposition designee, Voelker terminated the deposition without asking a single question regarding the proposed Tongasat/Rimsat compromise.

Afterwards, Tongasat filed a motion for

sanctions based on the deposition. The motion alleged that Kauthar's attorneys never had any intention to depose Lau and intentionally sabotaged the Lau deposition. The motion sought attorneys' fees and other costs associated with the deposition.

When the parties next came before the bankruptcy judge, the judge informed "Kauthar's counsel" that he was disturbed by the deposition and, in light of their previous conduct in the litigation, he was seriously considering not only imposing a monetary sanction but also revoking their pro hac vice status./1 Kauthar's counsel filed a response to Tongasat's sanctions motion contending that their conduct was entirely reasonable. Tongasat then filed a reply disputing the contentions of Kauthar's counsel and requesting, among other additional sanctions, that the pro hac vice status granted Kauthar's counsel be revoked.

Approximately eleven months after receiving Tongasat's reply, and thirteen months after approving the proposed Tongasat/Rimsat compromise, the bankruptcy court ruled on the sanctions motion. It concluded that in light of the conduct of Kauthar's counsel throughout the litigation and the behavior of their counsel at the Lau deposition, there could be no doubt that Kauthar's counsel never had any intention of seeking relevant information from Lau, but rather sought only to increase the cost and inconvenience of the litigation and delay the then-imminent hearing regarding the Tongasat/Rimsat compromise. Pursuant to its authority to impose sanctions under 11 U.S.C. sec. 105(a) and the inherent powers doctrine, the bankruptcy court ordered Kauthar and its attorneys to pay $10,890.81 in costs associated with the Lau deposition and revoked Voelker's, Howard's, and Factor's pro hac vice status. Kauthar and its attorneys appealed to the district court, but the district court affirmed the sanctions order. Now Kauthar and its attorneys appeal to this court,/2 contending that they were denied due process when the bankruptcy court sanctioned them, that the bankruptcy court abused its discretion in sanctioning them, and that the sanctions order against them must be vacated because the bankruptcy court waited too long to issue it./3

II

Before we consider the appellants' challenges to the bankruptcy court's sanctions order, we must determine whether we have jurisdiction over the present appeal. The general rule is that a court of appeals has jurisdiction over a bankruptcy

appeal only if the bankruptcy court's original order and the district court's order reviewing the bankruptcy court's original order are both final. 28 U.S.C. sec. 158(d); In re Devlieg, Inc., 56 F.3d 32, 33 (7th Cir. 1995) (per curiam); In re Morse Elec. Co., 805 F.2d 262, 264 (7th Cir. 1986); 16 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure sec. 3926.2, at 273 (2d ed. 1996). In the bankruptcy context, however, finality does not require a final order concluding the entire bankruptcy proceeding; certain orders entered prior to the conclusion of the bankruptcy proceeding will be deemed final. In re Forty-Eight Insulations, Inc., 115 F.3d 1294, 1298-99 (7th Cir. 1997); In re Official Committee of Unsecured Creditors of White Farm Equip. Co., 943 F.2d 752, 754-55 (7th Cir. 1991). Where an order terminates a discrete dispute that, but for the bankruptcy, would be a stand-alone suit by or against the trustee, the order will be considered final and appealable. In re Szekely, 936 F.2d 897, 899-900 (7th Cir. 1991); Wright, Miller, & Cooper, supra, sec. 3926.2, at 272-73.

Dicta in In re Wade, 991 F.2d 402, 406 (7th Cir. 1993), suggests that sanctions orders fall into this category, but it is unclear whether such a position can be maintained in the wake of Cunningham v. Hamilton County, Ohio, 119 S. Ct. 1915 (1999), which holds that sanctions orders are not automatically appealable prior to final judgment, at least in the non-bankruptcy context. Even if it was not final at the time it was issued, we are persuaded that the bankruptcy court's sanctions order has since become final. Kauthar's claims against the bankruptcy estate have been valued and accepted, and the final distribution of the bankruptcy estate's claims has been approved. Because Kauthar's dispute with the bankruptcy estate has been resolved, orders relating to Kauthar's participation in the bankruptcy proceeding are now final. White Farm Equip., 943 F.2d at 755; Szekely, 936 F.2d at 899-900; see also Forty-Eight Insulations, 115 F.3d at 1298-99. That this finality arose after the present appeals were filed is no barrier to jurisdiction, as the doctrine of cumulative finality allows an appeal from a non-final order to be "saved" by subsequent events that establish finality. See In re Emerson Radio Corp., 52 F.3d 50, 52 (3d Cir. 1995); In re Interwest Bus. Equip., Inc., 23 F.3d 311, 314-15 (10th Cir. 1994); Wright, Miller, & Cooper, supra, sec. 3926.2, at 290. Therefore, and since there is no reason to doubt the finality of the district court's order simply affirming the bankruptcy court's order, our jurisdiction over this appeal is secure. We now turn to the challenges the appellants raise to the bankruptcy court's

sanctions order.

III

A.  Due Process

The appellants first challenge the bankruptcy court's sanctions order on constitutional grounds. They contend that the bankruptcy court failed to afford them the fair notice and opportunity to be heard that the Fifth Amendment's due process clause requires a court to provide before imposing sanctions. See In re Hancock, 192 F.3d 1083, 1086 (7th Cir. 1999); Larsen v. City of Beloit, 130 F.3d 1278, 1286-87 (7th Cir. 1997). As the appellants' due process challenge raises issues of law, our review is plenary. Martin v. Brown, 63 F.3d 1252, 1262 (3d Cir. 1995); Kirkland v. National Mortgage Network, Inc., 884 F.2d 1367, 1370 (11th Cir. 1989). Cf. United States v. Kirschenbaum, 156 F.3d 784, 792 (7th Cir. 1998) (noting that, in general, due process claims are reviewed de novo).

The appellants first complain that they received inadequate notice that they were possible subjects of sanctions. The bankruptcy court's practice of referring to them collectively as "Kauthar's counsel," they contend, did not sufficiently put them on notice. Fair notice can come from the court or an opposing litigant, Hancock, 192 F.3d at 1086 (notice from the court); Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999) (notice from opposing party); Martin, 63 F.3d at 1263 (notice from opposing party), but it must, among other things, inform the person that he or she is in jeopardy of being sanctioned by the court. Hancock, 192 F.3d at 1086; Larsen, 130 F.3d at 1286-87.

Voelker and Howard have no grounds for contending that they did not receive adequate notice. They are specifically mentioned in Kauthar's motion for sanctions, and they were the ones who conducted the Lau deposition. That their conduct at the Lau deposition might be the basis for sanctions could hardly have been more plain. Consequently, we conclude that they received adequate notice that they might be sanctioned.

Factor tries to distinguish himself from Voelker and Howard by pointing out that he was not present at the Lau deposition and the bankruptcy court's reference to "Kauthar's counsel" did not put him on notice that he might be sanctioned based on the deposition. The problem with this argument is that Tongasat's motion for sanctions

specifically asks the bankruptcy court to impose sanctions against Kauthar's attorneys based upon "the notice of, argument for, and conduct of the deposition of Edward Lau." Since Factor signed the notice of deposition, Tongasat's motion put him on notice that his conduct might be the basis for sanctions. Moreover, in detailing the evidence of Kauthar's counsels' intent to harass individuals associated with Tongasat, Tongasat's motion for sanctions specifically refers to an argument Factor made regarding the possibility of deposing the Princess. In light of these facts, the practice of the bankruptcy court and Tongasat to refer to Kauthar's attorneys collectively, rather than individually, should have put Factor on notice that he was in jeopardy of being sanctioned. Thus, Factor received adequate notice that he might be sanctioned.

The appellants next complain that they received inadequate notice of precisely what conduct might warrant sanctions. They contend that, although the bankruptcy court based its sanctions decision on the entire course of Kauthar's counsels' conduct with respect to the Tongasat/Rimsat compromise, neither the bankruptcy court nor Tongasat ever specifically identified particular instances of misconduct, other than the events surrounding the Lau deposition. And, a court may not, consistent with due process, impose sanctions based on particular conduct unless the parties being sanctioned have received notice (from the court or an opposing party) that that conduct may be the basis for sanctions. Schlaifer Nance, 194 F.3d at 334; Bonilla v. Volvo Car Corp., 150 F.3d 88, 93 (1st Cir. 1998); Martin, 63 F.3d at 1263.

In this case, however, we do not read the bankruptcy court's sanctions order as relying on conduct, other than that related to the Lau deposition, in a manner that gives rise to an obligation to provide the kind of particularized notice the appellants believe they were due. The bankruptcy court merely referred to Kauthar's general litigation strategy as evidence to support the court's finding that the appellants intentionally sabotaged the Lau deposition in an effort to further delay the proceedings and inconvenience Tongasat and to explain why monetary sanctions alone would be insufficient to deter similar future conduct. Moreover, the court never referred to particular instances of conduct outside the events surrounding the Lau deposition; it referenced only Kauthar's general litigation strategy. As particular conduct, other than that related to the Lau deposition, did not actually form the basis for the sanctions imposed, there is no reason to think that Kauthar's attorneys were entitled to the sort of

particularized notice they believe they were due. When a court imposing sanctions simply cites attorney conduct for the limited purpose of providing context and background, particularized notice is not required. In fact, demanding particularized notice in such situations would only discourage sanctioning courts from writing the sort of comprehensive sanctions orders, containing all of the relevant background material, that are most helpful to reviewing courts.

To the extent that the appellants were entitled to notice informing them that Kauthar's general litigation strategy might provide a background against which Tongastat's motion would be evaluated, statements by the bankruptcy court and in Tongasat's sanctions motion referencing Kauthar's general litigation strategy with respect to the Tongasat/Rimsat compromise provided adequate notice. For instance, before taking Tongasat's motion for sanctions under advisement, the bankruptcy judge spoke of the context in which Tongasat's motion would be evaluated, "For a year [Kauthar's counsel has] apparently embarked upon what appears to be a conscious effort to maximize litigation and, in doing so, make certain that the litigation is as time-consuming, difficult, unpleasant, and expensive as humanly possible." The bankruptcy court did not deny the appellants due process by failing to ensure that they received adequate notice of what conduct might subject them to sanctions.

Finally, the appellants complain that the bankruptcy court deprived them of their due process right to have an adequate opportunity to be heard by not holding a hearing before imposing sanctions. Providing an opportunity to be heard includes giving an attorney against whom a court is considering imposing sanctions the chance to present his or her case at a meaningful time in a meaningful manner, but a hearing is not invariably required before sanctions may be imposed. Hancock, 192 F.3d at 1086; Kapco Mfg. Co. v. C & O Enters., Inc., 886 F.2d 1485, 1494–95 (7th Cir. 1989); Schlaifer Nance, 194 F.3d at 335; Cook v. American S.S. Co., 134 F.3d 771, 774-76 (6th Cir. 1998). Putting to one side the possibility that the appellants were not entitled to a hearing in the first place, the problem with the appellants' argument that the bankruptcy court should have held a hearing before imposing sanctions is that the appellants never requested a hearing. Since a court is not invariably required to provide a hearing before imposing sanctions, the appellants' failure to request a hearing waives any right they might have had to one. See Kapco, 886 F.2d at 1495 (suggesting that

request for hearing after sanctions were imposed was too late). Accordingly, the bankruptcy court did not err by imposing sanctions without holding a hearing./4

B.   Abuse of Discretion

The appellants next challenge the merits of the bankruptcy court's decision to sanction them. We review a decision to impose sanctions for an abuse of discretion. Hancock, 192 F.3d at 1085. Unless the sanctioning court has acted contrary to the law or reached an unreasonable result, we will affirm the sanctions decision. See generally Hernandez v. Joliet Police Dept., 197 F.3d 256, 264 (7th Cir. 1999); Johnson v. Kakvand, 192 F.3d 656, 661 (7th Cir. 1999).

The appellants first argue that the sanctions imposed against them must be reversed because the bankruptcy court failed to make an explicit finding of bad faith. The parties agree that the bankruptcy court could only exercise its authority under 11 U.S.C. sec. 105(a) and the inherent powers doctrine to impose sanctions if the appellants acted in bad faith./5 It is also agreed that the bankruptcy court did not explicitly say that the appellants acted in bad faith. Still, it is impossible to read the bankruptcy court's opinion without concluding that the bankruptcy court did in fact determine that the appellants acted in bad faith. For example, the bankruptcy court found that Kauthar's attorneys, acting in concert, had decided in advance to sabotage the Lau deposition and that they did so intentionally and for the purposes of imposing costs on Tongasat and delaying the upcoming hearing on the Tongasat/Rimsat compromise. Such conduct certainly qualifies as bad faith conduct, even if the bankruptcy court never said so in so many words. Nevertheless, the appellants contend that the bankruptcy court's failure to use the words "bad faith" requires that we reverse the bankruptcy court's sanctions order./6

We disagree. Reversing an order imposing sanctions in the face of findings like those made by the bankruptcy court in this case simply because the sanctioning court did not use the words "bad faith" would needlessly elevate form over substance. Where it is clear that a court has found that a litigant intentionally abused the judicial process in an unreasonable and vexatious manner, we will not reverse an order imposing sanctions merely because the sanctioning court did not make an explicit finding of "bad faith." Cf. In re Volpert, 110 F.3d 494, 500-01 (7th Cir. 1997) (affirming sanctions order under 11 U.S.C. sec. 105(a) without mentioning any

explicit finding of bad faith by the sanctioning court). In this case, the bankruptcy court's failure to make an explicit finding of "bad faith" does not require us to reverse the sanctions it imposed against the appellants.

The appellants next argue that their conduct did not warrant sanctions in any event. With respect to Voelker and Howard this argument is impossible to accept. They were the ones who conducted the Lau deposition in an unproductive and harassing manner, and such behavior is undoubtedly sanctionable. See generally Carroll v. Jacques Admiralty Law Firm, P.C., 110 F.3d 290 (5th Cir. 1997) (sanctions imposed based on abusive conduct during deposition); Sassower v. Field, 973 F.2d 75, 78 (2d Cir. 1992) (sanctions imposed based on a pattern of vexatious conduct including "incredibly harassing depositions"); Heinrichs v. Marshall & Stevens Inc., 921 F.2d 418 (2d Cir. 1990) (sanctions imposed based on improper conduct at depositions). Voelker and Howard, nevertheless, attempt to explain their conduct at the deposition as a reasonable response to Lau's intransigence. But, even if their conduct could be given the innocent explanation they urge, the bankruptcy court did not abuse its discretion in interpreting the events differently.

With respect to Factor, the question is a closer one, as there is no direct evidence of his participation in the scheme to sabotage the Lau deposition. Still, there is sufficient circumstantial evidence that Factor acted in concert with Voelker and Howard and that Factor shares responsibility for the scheme. To begin with, Factor was the attorney for Kauthar who noticed the Lau deposition. Likewise, he signed the motion to compel the Princess's deposition, a deposition the bankruptcy court considered to be a part of the plan to delay the proceedings and otherwise inconvenience Tongasat and those associated with Tongasat. Moreover, he, Voelker, and Howard were all members of the same law firm and jointly represented Kauthar in the bankruptcy proceedings. In fact, it was Factor who argued against Tongasat's objection to Kauthar's request to depose the Princess and who chose to go ahead and depose Lau. Perhaps most significantly, however, the bankruptcy judge, who was undoubtedly familiar with the roles played by the various counsel who appeared before him, found that Factor acted in concert with Voelker and Howard to sabotage the Lau deposition. For all these reasons, it is impossible to conclude that the bankruptcy court abused its discretion in sanctioning Factor.

The appellants next argue that, even if

sanctions are appropriate, the sanctions the bankruptcy court imposed are excessive and unwarranted. However, the appellants did not make these arguments to the bankruptcy court in their response to Tongasat's motion for sanctions. And, such arguments must be made to the sanctioning court if they are to be considered by a reviewing court, as the failure to make an argument constitutes waiver of that argument. In re Kroner, 953 F.2d 317, 319 (7th Cir. 1992); Magicsilk Corp. of N.J. v. Vinson, 924 F.2d 123, 125 (7th Cir. 1991) (per curiam). Since the appellants did not argue (at least in a timely fashion/7) that any of the sanctions proposed by or to the bankruptcy court would have been excessive or unwarranted if in fact sanctions were appropriate, we will not consider their arguments on appeal.

Finally, Factor, alone, argues that because ordinary procedural rules would have been adequate to address the misconduct on his part, the bankruptcy court abused its discretion by resorting to 11 U.S.C. sec. 105(a)/8 and its inherent powers. Specifically, Factor suggests that Bankruptcy Rules 9011/9 and 7026/10 (which largely track Rules 11 and 26 of the Federal Rules of Civil Procedure) would have been adequate to sanction his misconduct. The bankruptcy court opted instead to rely on its authority under 11 U.S.C. sec. 105(a) and the inherent powers doctrine because Rules 9011 and 7026 would only allow the court to sanction Factor, as he was the only one who signed the Lau notice of deposition.

A sanctioning court should ordinarily rely on available authority conferred by statutes and procedural rules, rather than its inherent power, if the available sources of authority would be adequate to serve the court's purposes. Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991); Corley v. Rosewood Care Ctr., Inc. of Peoria, 142 F.3d 1041, 1058-59 (7th Cir. 1998). But, this rule does not require the sanction imposed on Factor to be reversed. To begin with, the bankruptcy court acted pursuant to its statutory authority under 11 U.S.C. sec. 105(a) as well as its inherent powers. Thus, it is unlikely that the rule to which Factor appeals even applies to his situation. Moreover, a sanctioning court is not required to apply available statutes and procedural rules in a piecemeal fashion where only a broader source of authority is adequate to justify all the necessary sanctions. Chambers, 501 U.S. at 50-51. The bankruptcy court was justified in resorting to 11 U.S.C. sec. 105(a) and its inherent powers in order to ensure that all the culpable parties received an appropriate sanction and did not abuse its discretion in

declining to sanction Factor under Bankruptcy
Rule 9011 or 7026.

C.  Timeliness of Sanctions

    The appellants contend that the 13-month delay
between the bankruptcy court's acceptance of the
proposed compromise of the Tongasat claims and
the final issuance of its sanctions order
requires that the sanctions order be reversed.
The appellants cite Prosser v. Prosser, 186 F.3d
403 (3d Cir. 1999), in which the Third Circuit,
pursuant to a rule announced under its
supervisory power, reversed a sua sponte
sanctions order that was entered after final
judgment. In an effort to prevent piecemeal
appeals and ensure that the deterrent effect of
a sanction is not dissipated through delay, the
Third Circuit held that such orders must be
entered prior to final judgment if they are based
on conduct occurring prior to that time. Id. at
405-06.

    Even if we were persuaded to adopt the same
rule the Third Circuit has, but Cf. Divane v.
Krull Elec. Co., 200 F.3d 1020, 1025 (7th Cir.
1999) (rejecting proposal to require Rule 11
motions to be filed before final judgment), the
present case would not call for the application
of the rule. To begin with, while the
Tongasat/Rimsat compromise had been approved, the
bankruptcy action itself remained open and
Kauthar remained an active litigant. Thus, the
approval of the Tongasat/Rimsat compromise (even
if it were considered an appealable final
decision) does not create the same sort of
finality as an ordinary final judgment and
therefore does not justify the same requirement
that sanctions orders be issued before a court
enters a final judgment. Moreover, the Third
Circuit's rule appears to apply only to sua
sponte sanctions orders. Here the sanctions order
was the product of a sanctions motion filed by
Tongasat. In sum, while lengthy delays in the
imposition of sanctions are not preferable, we do
not believe the delay that occurred in this case
warrants reversing the bankruptcy court's
sanctions order.

IV

    In sanctioning the appellants the bankruptcy
court did not deprive the appellants of due
process, abuse its discretion to impose
sanctions, or otherwise commit reversible error.
Accordingly, we AFFIRM the bankruptcy court's order
imposing sanctions against the appellants.

/1 Pro hac vice status allows an attorney who has not been admitted to practice before a court to practice before that court in a particular case. See Black's Law Dictionary 1227-28 (7th ed. 1999).

/2 After it appealed, Kauthar reached a settlement with the other parties to the bankruptcy proceeding, including Tongasat, releasing each party from any claim relating to the proceeding that might be asserted by any of the other parties. Thus, Kauthar's challenge to the bankruptcy court's sanctions order is moot and Kauthar is dismissed as a party to this appeal. See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18 (1993). However, because Voelker, Howard, and Factor are not parties to the settlement agreement and a release would not address the revocation of their pro hac vice status, their challenges to the bankruptcy court's sanctions order are not moot.

/3 Appellants Kauthar, Voelker, and Howard also request that we expunge certain portions of the bankruptcy court's order that they contend are without factual support. While we certainly may reverse or vacate the bankruptcy court's decision to impose sanctions, we seriously doubt whether we can expunge portions of the court's order. The authority we have discovered, although not directly on point, suggests that such relief is not available by way of appeal. See Clark Equip. Co. v. Lift Parts Mfg. Co., 972 F.2d 817, 820 (7th Cir. 1992) (refusing to vacate opinion criticizing attorney, but mentioning that the attorney might seek mandamus); Bolte v. Home Ins. Co., 744 F.2d 572 (7th Cir. 1984) (concluding challenge to opinion criticizing, but not sanctioning, attorney is not appealable). And, the appellants have not cited any authority to the contrary. Accordingly, we deny the request to expunge portions of the bankruptcy court's opinion.

/4 The appellants also mention in passing an allegation that they had inadequate notice of the source of the authority the bankruptcy court would invoke. Beside the fact that the appellants never develop an argument on this ground, such an argument would be a difficult one to make because Tongasat specifically referred to 11 U.S.C. sec. 105(a) in its sanctions motion and a bankruptcy court's authority to act under that statutory provision is often tied to the inherent powers doctrine. See In re Volpert, 110 F.3d 494, 501 (7th Cir. 1997) (discussing without deciding the issue).

/5 The parties' agreement subsumes at least two unresolved issues, whether a bankruptcy court can

act pursuant to the inherent powers doctrine, and whether bad faith is required for a bankruptcy court to exercise its authority under 11 U.S.C. sec. 105(a). We offer no opinion on these issues.

/6 The appellants cite cases involving sanctions imposed pursuant to the inherent powers doctrine in which the reviewing court has required a specific finding of bad faith. See, e.g., Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980); Elliott v. Tilton, 64 F.3d 213, 217 (5th Cir. 1995). However, it is impossible to tell from these cases whether a sanctioning court would have to use the words "bad faith" or whether explicit findings demonstrating unequivocally that the sanctioned party had acted in bad faith would be sufficient. Accordingly, the cases the appellants cite are not particularly helpful in reviewing the sanctions order in this case.

/7 In a motion to reconsider, Factor did argue that revoking his pro hac vice status was an excessive sanction, but arguments raised for the first time in a motion to reconsider are not preserved for appeal. Green v. Whiteco Indus., Inc., 17 F.3d 199, 201 n.4 (7th Cir. 1994).

/8 In relevant part, 11 U.S.C. sec. 105(a) provides, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

/9 The version of Rule 9011 in effect when Factor's misconduct took place allowed a bankruptcy court to sanction an attorney who signed a pleading or other paper that was frivolous or vexatious.
/10 Rule 7026 simply incorporates by reference Federal Rule of Civil Procedure 26, which allows a court to sanction an attorney who signs a discovery request, response, or objection that is frivolous or vexatious.