In re Larry and Kellie MARVEL, Debtors.

Universal Bank, N.A., Plaintiff,

v.

Larry and Kellie Marvel, Defendants.

No. C–00–3494 PJH.

United States District Court, N.D. California.

July 27, 2001.

Anne L. Keck, Michael W. Ahern, Ahern & Keck, Windsor, CA, for appellant.

David N. Chandler, Santa Rosa, CA, for appellees.

## ORDER AFFIRMING BANKRUPTCY COURT'S AWARD OF SANCTIONS

HAMILTON, District Judge.

Before the court is an appeal from an order of the United States Bankruptcy

Court of the Northern District of California (Santa Rosa) awarding sanctions issued for the misuse of a disqualification motion. Appellant Anne Keck ("Keck"), attorney for Universal Bank, appeals the order assessing sanctions in the amount of $2,000.[1] Having carefully reviewed the parties' papers and considered their arguments and relevant legal authority, the court hereby AFFIRMS the Bankruptcy Court's decision for the following reasons.

## BACKGROUND

Lawrence and Kellie Marvel ("Marvels") filed a petition for relief in bankruptcy court on August 10, 1999. On November 5, 1999, Universal Bank ("Universal") filed a complaint in an adversary proceeding alleging "credit card abuse." Universal noticed the Marvels' depositions to take place in Santa Rosa, over two hundred miles from their home in Eureka. The Marvels' attorney, Larry Meyers of Eureka, arranged for David Chandler ("Chandler") of Santa Rosa to represent the Marvels at their depositions.

The day before the depositions, Keck received a letter from Meyers indicating Chandler would appear with the Marvels at the depositions. According to Keck, prior to receiving this letter, she was informed by a Eureka attorney named Crlenjak that Chandler had solicited his client, a defendant in another Universal case. Crlenjak told Keck that Chandler was seeking to represent Crlenjak's client pro bono for the "purpose of garnering information for a class action suit Mr. Chandler hoped to file against Universal." According to Crlenjak, Chandler said he was conducting a clientless investigation and was offering his legal services to other debtors for the purpose of obtaining clients for a class action suit against Universal.

According to Chandler, he was representing another client against Universal and inquired of several attorneys as to their experience with Universal in non-dischargeability cases and indicated his interest in reviewing similar cases with them. Crlenjak told Chandler about the facts of the case he was working on and noted that he could not afford to represent the defendant, who was without funds. Chandler says he suggested "that should Mr. Crlenjak desire to refer the client, he would undertake the defense on a no fee basis."

At the Marvels' depositions, on May 5, 2000, Keck indicated she would not proceed in the presence of Chandler, as he was not the attorney of record in the case. Chandler replied that he would associate as counsel and approximately 20 minutes later, Chandler obtained an association of counsel signed by both the Marvels and Meyers. By this time, Keck had dismissed the court reporter (although she was still on the premises). Keck then left the deposition room and refused to re-enter.

On May 18, 2000, Keck filed a motion to disqualify Chandler from representing the Marvels, a motion to permit Universal to conduct additional discovery and complete discovery, and a motion to continue the trial date.

The bankruptcy court denied each motion on June 2, 2000. The court then issued, *sua sponte*, an order to show cause re sanctions, directed at Universal and Keck for the motion to disqualify Chandler. On July 19, 2000, after the hearing on the order to show cause, the bankrupt-

---

1. Universal Bank chose not to appeal the bankruptcy court's order, and is therefore not a party to this appeal.

cy court issued an order awarding $2,000 in sanctions against Keck and Universal.

In its order awarding sanctions, the bankruptcy court finds the motion to disqualify was without merit and brought for an improper purpose. The bankruptcy court indicates that there was no basis to assume Chandler was violating California Rules of Professional Conduct. Furthermore, the court notes that Keck likely made the motion because of her dislike for Chandler and as a "pre-emptive strike" to discourage him from taking further actions against Universal. Keck filed this appeal on August 17, 2000.

## DISCUSSION

### A. Legal Standard

■■■ Bankruptcy courts have the inherent power to sanction vexatious conduct. *In re Rainbow Magazine*, 77 F.3d 278, 283 (9th Cir.1996). This power is recognized in 11 U.S.C. § 105(a), which states:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or im-

plement court orders or rules, or to prevent an abuse of process. 11 U.S.C. § 105(a).

Because of the potency of this inherent power, the court must exercise restraint and discretion in using this power. *Chambers v. NASCO*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

■■■ Generally speaking, before ordering sanctions under its inherent powers, a court must make a specific finding that counsel's conduct was tantamount to bad faith. *Primus Automotive Financial Services v. Batarse*, 115 F.3d 644, 648 (9th Cir.1997). Bad faith exists where an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."[2] *Id.* at 649 (citing *In re Keegan*, 78 F.3d 431, 436 (9th Cir. BAP 1995)).

■■■ In addition to the broad power to sanction under section 105(a), a bankruptcy court may also render sanctions under Bankruptcy Rule 9011 or 28 U.S.C. § 1927. *In re Chisum*, 68 B.R. 471, 473 (9th Cir. BAP 1986). Section 1927 authorizes sanctions against attorneys who have "multiplied the proceedings ... unreasonably and vexatiously."[3] Rule 9011 authorizes a court to sanction if an attorney violates his or her certification that there is a legal basis for their pleading, motion, or other paper.[4]

---

**2.** Bad faith can also be demonstrated by delaying, disrupting, or hampering enforcement of a court order. *Primus Automotive Financial Services,* 115 F.3d at 649.

**3.** Section 1927 states in part:
Any attorney ... who so multiplies the proceedings in a case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct. 28 U.S.C. § 1927.

**4.** Bankruptcy Rule 9011 states in relevant part:

The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation ... If a document is signed in violation of this rule, the court ... shall impose on the person ... an order to pay to the other party or

■ The standard for a district court's review of a bankruptcy court's decision is identical to the standard used by appellate courts in reviewing district court decisions. *In re Baroff,* 105 F.3d 439, 441 (9th Cir. 1997). The district court thus reviews the bankruptcy court's conclusions of law *de novo,* and reviews its factual findings for clear error. *In re George,* 177 F.3d 885, 887 (9th Cir.1999).

■ A court's decision to impose sanctions is reviewed under an abuse of discretion standard. *In re Chisum,* 68 B.R. at 473 (citing *Roadway Express v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). An abuse of discretion is found if the reviewing court "has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of the relevant factors." *In re Crayton,* 192 B.R. 970, 975 (9th Cir. BAP 1996) (citing *U.S. v. Plainbull,* 957 F.2d 724, 725 (9th Cir.1992)). Furthermore, a reviewing court cannot overturn facts unless they are clearly erroneous. *In re Crayton,* 192 B.R. at 975.

### B. Keck's Request for Reversal of Sanctions

Keck makes three main arguments in her request for reversal of sanctions. First, she argues that the bankruptcy court's use of its inherent powers under section 105(a) (as opposed to more specific statutory provisions) was erroneous as a matter of law. Second, Keck disputes the bankruptcy court's finding that her motion to disqualify Chandler was without merit. Finally, Keck argues that the bankruptcy court violated her due process rights by failing to identify the evidence it relied on in assessing sanctions.

### 1. The Bankruptcy Court's Invocation of its Inherent Powers

Keck argues that the bankruptcy court improperly invoked its powers to award sanctions against her for two reasons. First, she argues that the court failed to find bad faith and thus violated the American Rule by fee shifting. Second, Keck argues that the court may only use its section 105(a) inherent powers to sanction when there is no other applicable rule, and that the court should have applied Bankruptcy Rule 9011.

#### a. Whether the Court Found that Keck Acted in Bad Faith

■ Keck contends that to invoke its inherent powers to sanction, a court must find a high level of misconduct or repeated acts of violating court orders or rules. Keck argues that the bankruptcy court's reasons for sanctioning her were not sufficient. Rather, she says that the bankruptcy court awarded fees as a way to "even the playing field." Keck states, "[t]he bankruptcy court did not like the motion based on the financial inequities of the case: this is simply an insufficient ground, as a matter, [sic] of law, to award sanctions under the court's inherent powers."

In addition, Keck argues that a finding of bad faith is not enough. Citing to *Pacific Harbor Capital v. Carnival Air Lines,* 210 F.3d 1112, 1124 (9th Cir.2000), she contends that in the Ninth Circuit, an attorney may be sanctioned for making a frivolous argument only where such arguments take up time and expense of the court.

■ Neither of these arguments have merit. Courts affirm sanctions even where there is no explicit finding of bad faith. *Primus Automotive,* 115 F.3d at 649; *In re Rimsat,* 212 F.3d 1039, 1045 (7th Cir.2000). The court may sanction an

parties the amount of reasonable expenses incurred[.]

attorney for making a motion to disqualify opposing counsel where no evidence or facts are presented to justify the motion. *Adriana International Corp. v. Thoeren,* 913 F.2d 1406, 1416 (9th Cir.1990). Furthermore, it is established that a court can use its inherent powers to sanction if a party's motion was without merit and if the party acted for an improper reason. *Agee v. Paramount Communications,* 114 F.3d 395, 398 (2d Cir.1997). Additionally, nothing in the case law cited by Keck limits the use of inherent sanctioning powers to "only" those situations where frivolous arguments take up time and expense. *Pacific Harbor Capital,* 210 F.3d at 1124. Rather, the Ninth Circuit more broadly states that a court *"needs"* the· inherent power in order to "punish and deter frivolous arguments." *Id.* (emphasis added). A court can use its inherent powers to sanction if a party has acted in "bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers,* 501 U.S. at 45–46, 111 S.Ct. 2123.

██ In its order awarding sanctions the bankruptcy court indicates there was no basis to assume Chandler was violating California Rules of Professional Conduct. The court also notes that Keck likely made the motion because of her dislike for Chandler and as a "pre-emptive strike" to discourage him from taking further actions against Universal. While one of these factors taken alone may be insufficient to demonstrate bad faith, the factors taken together provide a sufficient basis. *Salstrom v. Citicorp Credit Services,* 74 F.3d 183, 185 (9th Cir.1996). "[A] finding of bad faith 'does not require that the legal and factual basis for the action prove total-

ly frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees.'" *Mark Industries, Ltd. v. Sea Captain's Choice, Inc.,* 50 F.3d 730, 732 (9th Cir.1995) (citing *Lipsig v. National Student Marketing Corp.,* 663 F.2d 178, 182 (D.C.Cir.1980)). The bankruptcy court made a sufficient finding of bad faith.

### b. Whether the Court's Use of its Inherent Powers to Sanction was Inappropriate

██ Keck argues that the bankruptcy court used its inherent powers to sanction and ignored the explicit requirements of an applicable procedural rule. Keck contends that the type of conduct that she was sanctioned for is specifically addressed in Bankruptcy Rule 9011. She argues that because Rule 9011 provides courts with the power to sanction attorneys for filing frivolous motions, it was error for the court to invoke its inherent powers in assessing sanctions.

Keck does not suggest how she was prejudiced or harmed by the judge's use of § 105(a), as opposed to Rule 9011. Moreover, she has not established that the court was prohibited from using its inherent powers to sanction instead of an applicable statutory provision. In *Chambers,* the United States Supreme Court states that a federal court is not "forbidden to sanction bad-faith conduct by means of the inherent powers simply because that conduct could also be sanctioned under the statute or the Rules."[5] *Chambers,* 501 U.S. at 50, 111 S.Ct. 2123.

---

**5.** *Chambers* has been held to apply to the bankruptcy court's inherent powers. *See In re Rainbow Magazine,* 77 F.3d at 284 ("By providing that bankruptcy courts could issue orders necessary 'to prevent an abuse of pro-

cess,' Congress impliedly recognized that bankruptcy courts have the inherent powers to sanction that *Chambers* recognized exists within Article III courts.").

The Ninth Circuit has interpreted *Chambers* to mean that a court can use its inherent power to sanction "through [its] status as a court of justice." *In re Rainbow Magazine,* 77 F.3d at 283. The Ninth Circuit has also cited with approval a Third Circuit case which held it is not necessary for a court to "exhaust all other sanctioning mechanisms prior to resorting to its inherent power." *Primus Automotive Financial Services,* 115 F.3d at 647 (citing *Republic of Philippines v. Westinghouse Elec. Corp.,* 43 F.3d 65, 74–75 (3d Cir.1994)).

■■■■■ The bankruptcy court did not abuse its discretion by rendering the sanctions under its inherent power. While it is best for a court to rely on the statutory authority that most specifically addresses the conduct at issue, use of inherent powers instead of statutory authority does not require reversal. *In re Rimsat,* 212 F.3d 1039, 1049 (7th Cir.2000). If, in the discretion of the court, a statute or rule does not sufficiently address the conduct, a court may rely on its inherent power. *Chambers,* 501 U.S. at 51–52, 111 S.Ct. 2123. The judge sanctioned Keck for making a baseless motion brought for an improper purpose. Rather than attempting to specify which conduct was sanctioned under which rule or statute, the judge properly imposed sanctions for her entire conduct under its inherent powers. *Id.* "[A] sanctioning court is not required to apply available statutes and procedural rules in a piecemeal fashion where only a broader source of authority is adequate[.]" *In re Rimsat,* 212 F.3d at 1046. Unless the sanctioning court has acted contrary to law or unreasonably, sanctions will be affirmed. *Id.* The bankruptcy court acted pursuant to its statutory authority under § 105(a).

## 2. The Bankruptcy Court's Basis for Imposing Sanctions

Keck argues that the bankruptcy court's findings that the motion to disqualify was without merit and improper were erroneous. Keck contends that the motion was justified and was based on an allegation that would have had evidentiary support after further investigation.

### a. Merits of the Motion

Keck maintains that her motion to disqualify was based on facts that demonstrated Chandler's unethical behavior. She alleges that Chandler was violating the Rules of Professional Conduct by conducting a clientless investigation and soliciting clients. Furthermore, Keck argues that the bankruptcy court erred in refusing to recognize the legal premise of the motion and by denying her the opportunity to provide evidentiary support for these claims.

Keck's argument that Chandler acted unethically is without merit. Chandler offered his services pro bono to a client's attorney—this is not considered unethical. The California Standing Committee on Professional Responsibility and Conduct has stated that an attorney may offer his services to a client through the client's attorney. 1981 WL 27938, p. 5. There was no error in finding Keck's motion was without merit.

■■■■ A motion to disqualify must be based on present concerns and not those which are speculative or anticipatory. *In re Coordinated Pretrial Proceedings,* 658 F.2d 1355, 1361 (9th Cir.1981). Keck speculated that Chandler was conducting a clientless investigation for a future class action suit against Universal. The court thus had sufficient reason to find that the motion was not brought for proper reasons as it did not want to "derail the efficient progress of [the] litigation." *Evans v. Ar-*

*tek Systems Corp.,* 715 F.2d 788, 791 (2d Cir.1983).

Additionally, there was no reason for the court to grant Keck time for discovery on this issue. The court had sufficient reasons to believe Keck had alternative motivations for bringing the motion. Certainly, this court is not left with "a definite and firm conviction that the court below committed a clear error of judgment" by not permitting further discovery. *In re Crayton,* 192 B.R. at 975; *Plainbull,* 957 F.2d at 725. If anything, further discovery would have further burdened the debtors in what the bankruptcy judge perceived was an imbalanced proceeding.[6]

### 3. Due Process

■ Keck argues that she was denied due process because the bankruptcy court never identified the specific conduct that formed the basis of its decision to sanction. This argument is without merit.

At the hearing on the order to show cause the judge identified the basis for his concern. The judge specifically stated that the motion was without merit and was brought for improper reasons. The court states in the order:

> From the pleadings and arguments of Keck, plus the court's observation of her conduct in this case and in others before the court, the court finds that Keck's motion to disqualify Chandler was without merit and brought for two improper reasons: dislike of Chandler engendered in other cases, and a desire to make Chandler's investigation of her client's conduct more difficult.

Moreover, the order includes a footnote that states, "The court is not considering further sanctions for the refusal to proceed with the deposition, but is focusing only on

the propriety of the motion to disqualify Chandler." The court finds this is sufficient specificity of the conduct for which Keck is being sanctioned.

Furthermore, federal courts have stated that when a sanctioning court cites attorney conduct for the purpose of providing context and background, particularized notice is not a requirement. *In re Rimsat,* 212 F.3d at 1046. "[I]n fact, demanding particularized notice in such situations would only discourage sanctioning courts from writing the sort of comprehensive sanctions orders ... that are most helpful to reviewing courts." *Id.* Keck's due process rights were not violated by this order.

### C. Keck's Request to Depublish the Order

■ In addition to requesting a reversal of the sanctions order, Keck requests this court to depublish, vacate, and/or strike the sanctions order. Keck argues that publishing the order was "completely out of proportion to any alleged wrongdoing," has harmed her reputation, and has hurt her standing in the community.

Keck claims that a court may depublish, vacate, and/or strike a bankruptcy court's order pursuant to its inherent power under 11 U.S.C. § 105(a) and "based on the interests of justice." However, Keck never cites any case law supporting this court's authority to depublish an order filed by the bankruptcy court. Moreover, even assuming the ability to depublish, Keck has not shown that the "interests of justice" require depublication.

As stated above, the bankruptcy judge did not abuse his discretion in assessing sanctions. Furthermore, the bankruptcy court's order clearly indicates the reasons for the sanctions—Keck's motion was with-

---

**6.** During the hearing on the order to show cause, the judge notes that he viewed Keck's motion as "trying to increase the leverage" Universal already had over the Marvels.

out merit and made for improper reasons. That finding met the bad faith standard required for sanctions issued under a court's inherent power. There was no "clear error" in the judgment of the bankruptcy court, and this court finds no basis to depublish the order awarding sanctions.

## CONCLUSION

In accordance with the foregoing, the court hereby AFFIRMS the decision of the Bankruptcy Court awarding sanctions. This order fully adjudicates the motion listed at No. 6 of the clerk's docket for this case. This order closes the case and terminates all pending motions.

**IT IS SO ORDERED.**