In re PROTEVA, INC. and Proteva
Marketing Group, Inc.,
Debtors.

Liquidating Grantor's Trust of Proteva
Inc. and Proteva Marketing Group,
Inc., Plaintiff,

v.

Finova Capital Corporation, William
Lynch, Brian Jordan, and John
Roberts, Defendants.

Bankruptcy Nos. 99 B
26880, 99 B 26884.
Adversary No. 01 A 00022.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 29, 2001.

Francis F. Gecker, Joseph D. Frank & Micah R. Krohn, Chicago, IL, for Plaintiff.

Bruce N. Menkes, Catherine A. Van Horn & J. David Duffy of Mandell, Menkes & Surdyk, LLC, Chicago, IL, J. Douglas Bacon, Adedapo A. Adedeji of Latham & Watkins, Chicago, IL, for Defendant.

Ira Bodenstein, Chicago, IL, United States Trustee.

### MEMORANDUM OPINION

SUSAN PIERSON SONDERBY, Chief Judge.

This cause comes to be heard on the motion of Liquidating Grantor's Trust of Proteva, Inc. and Proteva Marketing Group, Inc. for sanctions. For the reasons stated herein, the motion is denied.

### FACTS

On January 3, 2001, Liquidating Grantor's Trust of Proteva, Inc. (the "Trust") filed a seven-count complaint (the "Complaint") against Finova Capital Corporation ("Finova"), William Lynch, Brian Jordan and John Roberts. Lynch, Jordan and Roberts are collectively referred to as the "Guarantors."

In the Complaint, the Trust seeks, *inter alia*, to: (i) avoid a security interest (the "Security Interest") that Finova holds in certain assets of the debtors, Proteva, Inc. and Proteva Marketing Group, Inc. as an alleged preference under 11 U.S.C. § 547; (ii) recover payments made to Finova during the 90-day preference period and payments made to the Guarantors during the one-year insider preference period; and (iii) recover damages from the Guarantors for purportedly breaching their alleged fiduciary duties to the creditors of Finova.

Many of the facts alleged in the Complaint which the Trust relies upon to support its request for relief against Finova and the Guarantors are the same. One of the common dispositive issues concerns whether the attachment of the Security Interest occurred during the preference period. Generally, if a court finds that a security interest attached during the preference period, and provided the other elements of a preference are met and no defense is sustained, the interest can be avoided and payments made during the preference period to the lender can be recovered for the estate.

On February 2, 2001, Finova filed a motion to dismiss the Complaint and/or for entry of summary judgment (the "Finova Dismissal Motion"). On March 1, 2001, the Trust filed its response to the Finova Dismissal Motion.

Further proceedings on the Complaint against Finova and the Finova Dismissal Motion were stayed by virtue of Finova's filing a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code on March 7, 2001 (the "Finova Petition Date"), in the United States Bankruptcy Court for the District of Delaware (the "Finova Chapter 11 Case").

On the Finova Petition Date, the Guarantors filed their motion to dismiss the Complaint and/or for entry of summary judgment (the "Guarantors' Dismissal Motion") with this Court. The Trust filed a response on May 18, 2001, and the Guarantors filed a reply on June 26, 2001.

On July 26, 2001, Finova filed a motion seeking an injunction under Sections 362(a) and 105 of the Bankruptcy Code, which if granted, would stay this Court's ruling on the Guarantors' Dismissal Motion. The next day, the Guarantors filed their motion to stay proceedings under Section 362(a), Federal Rule of Civil Procedure 19 and "principals of equity and judicial economy" and adopted the arguments in Finova's stay motion. The stay motions filed by Finova and the Guarantors are collectively referred to as the "Stay Motions."

In the Stay Motions, Finova and the Guarantors noted that any further proceedings on the Finova Dismissal Motion were stayed by virtue of the filing of the Finova Chapter 11 Case. Finova and the Guarantors argued, however, that the ruling on the Guarantors' Dismissal Motion should be stayed as well. One reason for the stay request was the risk to Finova of an adverse ruling on the issue of when the Security Interest attached should the Guarantors' Dismissal Motion go forward. The Guarantors argued that they would be hampered in defending against the Complaint, because much of the evidence relative to the Complaint is purportedly in Finova's possession and control.

Finova and the Guarantors relied upon a number of opinions in support of their arguments for this Court to impose a stay including, *In re Fernstrom Storage and Van Co.*, 938 F.2d 731 (7th Cir.1991); *555 M Mfg., Inc. v. Calvin Klein, Inc.*, 13 F.Supp.2d 719 (N.D.Ill.1998); and *Klaff v. Wieboldt Stores, Inc.*, 1988 WL 142163 (N.D.Ill.Dec.23, 1988). None of the cases cited have been reversed and all continue to be good law, although there are factual arguments and other cases upon which a court can rely to decline to impose a stay like the one requested by Finova and the Guarantors. *See,* argument and cases cited in the Trust's response to the Stay Motions.

At the initial hearing on the Stay Motions on August 1, 2001 (the "August 1st Hearing"), the parties discussed the fact that a hearing on the confirmation of the plan of reorganization filed in the Finova Chapter 11 Case was set for August 10, 2001. Counsel for Finova suggested that the ruling on the fully-briefed Guarantors' Dismissal Motion be stayed until the Finova Plan was confirmed. He agreed that once the Finova Plan was confirmed, the Stay Motions would be withdrawn as moot. The Court asked the Trust's counsel if the proposal was acceptable. The Trust declined the offer and requested thirty days to respond to the Stay Motions, fully acknowledging the possibility that the Stay Motions could become moot before the response deadline. The Court entered an order providing that the Trust had until August 31, 2001 to respond to the Stay Motions.

Because it is important to this decision, the colloquy from the August 1st Hearing summarized above by the Court is included below:

THE COURT: Well, you're just seeking to stay until after the confirmation hearing in the Delaware case which is August 10th; is that correct? Today is the 1st of August.

MR. BACON [Finova's counsel]: It is correct, your Honor, that we're only seeking the stay until the bankruptcy is completed up there. Counsel for the Trust seems to know more about that than I do, and that was the time frame

he mentioned. It's consistent with what I've been told informally. Frankly, your Honor, this thing has been set for another status on September 19th. I would be at this point satisfied with the stay until September 19th because it didn't seem to me—if you'll recall when we were here a week ago, I thought the motion was moot when this was set for the 19th. I so indicated, and your counsel, in effect, I thought said, "Well, your Honor, pending the status conference, we'd like you to move forward against the guarantors." I don't know whether the court contemplates that or not. If the court did, I would ask the court simply to stay this until the next status and we'd revisit the motion or an adversary proceeding at that time, by which point it should be moot because Finova should be out of bankruptcy.

THE COURT: Can you agree to this without more money being expended? Does it matter if a couple of weeks pass?

MR. KROHN [the Trust's counsel]: Well, what we would like to do, your Honor, because we're not sure when the stay is going to actually be lifted in the Finova bankruptcy case—I mean, I think we agree that there is a confirmation hearing that's scheduled for August 10th. I am not a participant, other than to represent Proteva as a claimant in that case, but I've not been closely following what's going on with respect to the confirmation process.

What we were thinking, and counsel may agree with this, the estate would like 30 days to respond to their motion, which would take us to August 31st. If the confirmation of the Finova bankruptcy plan moots out the motion, then sobeit, and then I think both sides will be satisfied.

MR. BACON: That would be fine with us, your Honor.

. . .

MR. KROHN: Your Honor, I just want to confirm something. Counsel said that Finova had no intention of staying the proceedings in this court after the stay has been lifted in Finova's bankruptcy case because, I mean, that affects how we proceed on these matters; is that correct?

MR. BACON: What I intended to say, your Honor, is this lawyer has no intention of going to the Finova bankruptcy court and trying to stay this court. It would be moot by the time the stay was lifted there anyway. I think I would get thrown out twice-over, so, yes, if I understood the question.

Excerpts of August 1, 2001 hearing, pp. 2–6.

As anticipated, the Finova Plan was confirmed by the Delaware Bankruptcy Court on August 10, 2001. Finova and the Guarantors did not immediately withdraw the Stay Motions. The Trust filed a response to the Stay Motions on August 31, 2001.

At the next scheduled hearing on the Stay Motions on September 19, 2001, Finova and the Guarantors withdrew the Stay Motions. Finova and the Guarantors advised the Court that the Stay Motions were moot in light of the confirmation of the Finova Plan and Finova could now fully participate in this adversary proceeding. As a result, the briefing schedule and ruling on the Finova Dismissal Motion could go forward and there was no reason for the Guarantors' Dismissal Motion to be stayed, as the risk of an adverse ruling was alleviated.

The Trust subsequently filed a motion for sanctions under Section 105 of the Bankruptcy Code against the Guarantors and Finova seeking to recover attorneys' fees and costs in the amount of $20,572.00, which the Trust expended in responding

the Stay Motions (the "Sanction Motion"). At the last hearing on the Sanction Motion before the Court on October 31, 2001 (the "October 31st Hearing"), counsel for the Trust advised that "in the spirit of compromise" it would voluntarily reduce its sanction request in an amount equal to all of the fees incurred by the Trust's law firm's first-year associate on this matter. Based on the fee entries appended to the Sanction Motion, the amount of the sanction request has been reduced to $5,359.00.

The Trust argues that the Stay Motions were not legitimate requests for relief. Rather, the Trust asserts that the motives for the filing of the Stay Motions were improper and diversionary. According to the Trust, the Stay Motions were filed to multiply the costs of litigation in order to discourage the Trust from aggressively pursing the Complaint. The Trust also maintains that Finova and the Guarantors unreasonably and vexatiously delayed withdrawing the Stay Motions when the Finova Plan was confirmed.

In response, Finova and the Guarantors argue that the Stay Motions were filed for a proper purpose and have a reasonable basis in fact and law. At the October 31st Hearing, Finova and the Guarantors' counsel explained that the Stay Motions were filed after the Guarantors' Dismissal Motion was fully briefed when it became apparent that the Finova Plan was not being confirmed as quickly as anticipated. At that time, it "dawned" on Finova's counsel that the Trust may get a judgment against Guarantors before Finova was able to participate in this adversary proceeding.

### DISCUSSION

■ As stated above, the Trust is requesting that this Court impose sanctions pursuant to Section 105(a) of the Bankruptcy Code. Section 105(a) confers statutory and inherent authority upon the bank-ruptcy court to impose sanctions. *In re Rimsat Ltd.*, 212 F.3d 1039, 1049 (7th Cir. 2000). "The Supreme Court has cautioned that because of the 'very potency' of a court's inherent power, it should be exercised 'with restraint and discretion'." *United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (2nd Cir.1991) *quoting Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991).

■ Finova and the Guarantors argue that the Sanction Motion should have been brought under Bankruptcy Rule 9011, the argument being that a party should not be denied the benefit of the "safe-harbor" provision under that rule. Although it is preferable, there does not appear to be a requirement that the Court employ the Bankruptcy Rule 9011 sanction procedures before considering Section 105 sanctions. *See Rimsat*, 212 F.3d at 1048:

A sanctioning court should ordinarily rely on available authority conferred by statutes and procedural rules, rather than its inherent power, if the available sources of authority would be adequate to serve the court's purposes. But, this rule does not require the sanction imposed . . . to be reversed. To begin with, the bankruptcy court acted pursuant to its statutory authority under 11 U.S.C. § 105(a) as well as its inherent powers . . . Moreover, a sanctioning court is not required to apply available statutes and procedural rules in a piecemeal fashion where only a broader source of authority is adequate to justify all the necessary sanctions. The bankruptcy court was justified in resorting to 11 U.S.C. § 105(a) and its inherent powers in order to ensure that all the culpable parties received an appropriate sanction and did not abuse its discretion in

declining to sanction ... under Bankruptcy Rule 9011 or 7026. (citations omitted).

■ Sanctions under Section 105(a) are justified when the "court has *clearly* found that a litigant 'intentionally abused the judicial process in an unreasonable and vexatious manner.'" *In re Collins,* 250 B.R. 645, 657 (Bankr.N.D.Ill.2000) *citing Rimsat,* 212 F.3d at 1047 (emphasis supplied). The party requesting sanctions has the burden of proof. *In re McNichols,* 258 B.R. 892, 902 (Bankr.N.D.Ill.2001). When the request for sanctions is serious, as it is here, the court must give it serious attention, which necessarily requires specific findings. *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1084 (7th Cir. 1987), *cert. dismissed Szabo Food Service, Inc. v. Canteen Corp.* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988). In this regard, the court should consider whether the challenged actions were without color and taken for improper purposes such as harassment or delay. *In re 680 Fifth Ave. Associates,* 218 B.R. 305, 324 (Bankr. S.D.N.Y.1998) (citations omitted).

■ The Trust has not satisfied its burden of proof. First, the Stay Motions had a reasonable basis in fact and law. As stated above, the authority relied upon by Finova and the Guarantors was good law when the Stay Motions were filed. In addition, the facts could support such a request. Granted, there may have been cases standing for the alternative proposition or the facts here may have been distinguishable, but Finova and the Guarantors were certainly within their rights to assert the Stay Motions.

Moreover, the Trust has not brought forth any evidence that would indicate that the actions of Finova, the Guarantors or their respective counsel, rose to the level of unreasonableness and vexatiousness necessary to establish sanctionable behavior. The Court cannot make specific findings of sanctionable conduct on this record. *See id.* (court denied request for sanctions because movant failed to provide any convincing evidence that the filing of a pleading or conduct of counsel was improper, "either because the claims asserted were without color or because the motives underlying the filing of the complaint and the challenged actions were impure.") and *In re Evanston Beauty Supply, Inc.,* 1992 WL 111107, at *4 (Bankr.N.D.Ill. May 01, 1992) (court refused to entertain competing sanction requests, where parties failed to introduce evidence to support their allegations).

The explanations offered at the October 31st Hearing by counsel for Finova and the Guarantors concerning the motivations for filing the Stay Motions were not made under an oath. On the other hand, the Trust did not ask that counsel be sworn and submit to cross-examination. Instead, the Trust indicated its consent for the Court to rule on the pleadings.

The Trust places great emphasis on the fact that Finova and the Guarantors waited approximately four months after the filing of the Guarantors' Dismissal Motion to file the Stay Motions, after the Guarantors' Dismissal Motion was fully briefed. The delay in filing the Stay Motions is seen by the Trust as evidence of an unreasonable multiplication of proceedings. The Court disagrees. As stated above, the Stay Motions were reasonably grounded in fact and law. Filing the Stay Motions after completion of briefing the Guarantors' Dismissal Motion did not delay proceedings. To explain, all that remained to be done after the Guarantors' Dismissal Motion was fully briefed, was for the Court to rule. The stay, if granted, would most likely be of relatively short duration, in place until the Finova Plan was confirmed. After the confirmation of the Finova Plan,

the stay would have terminated and the Court could rule on the Guarantors' Dismissal Motion, since it was fully briefed. Moreover, the Court could have denied the Stay Motions, in which case, the Court could consider the Guarantors' Dismissal Motion without having to wait for completion of briefing.

Finally, the comments made at the August 1st Hearing, cited above, indicate that the Trust's counsel knew that the Stay Motions would be withdrawn as moot if and when the Finova Plan was confirmed in the near future at that time. Nevertheless, the Trust's counsel insisted on a response deadline. There is nothing in the record for the Court to find that Finova, the Guarantors and/or their respective counsel knew that the Stay Motions would eventually be withdrawn, but intentionally, vexatiously and unreasonably let the time go by so the Trust would spend more money. Rather, what appears to have happened here is an unfortunate lack of communication. As discussed at the October 31st Hearing, counsel for the Trust was waiting for a telephone call or some communication from Finova and/or the Guarantors that the Finova Plan was confirmed and the Stay Motions were withdrawn. At the same time, Finova and the Guarantors were waiting for an inquiry from the Trust's counsel as to the status of the Finova Plan confirmation.

Finally, Finova's counsel has advised that Finova will not seek sanctions against the Trust for bringing the Sanction Motion in order to avoid further litigation. The Court appreciates this sentiment. Finova's counsel did request, however, that the Trust's counsel be directed to send copies of this Memorandum Opinion and the underlying pleadings to the Trust, in order to ensure that the trustees of the Trust who are charged with reining in litigation costs are aware of what is transpiring. The Court will not enter such an order as the Court is satisfied with the Trust's counsel's representation that the Trust is being kept aware of these matters.

For the reasons set forth above, the Court denies the motion of Liquidating Grantor's Trust of Proteva, Inc. and Proteva Marketing Group, Inc. for sanctions.