**PRIMUS AUTOMOTIVE FINANCIAL SERVICES, INC., Plaintiff–Appellee,**

v.

**Rudolph A. BATARSE, Defendant,**

**Jan C. Nielsen, Appellant.**

**No. 96–15461.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 17, 1997.

Decided May 28, 1997.

Jan C. Nielsen, Clayton, California, Pro per, for the appellant.

Michael J. Steiner and Gregory C. Nuti, Severson & Werson, San Francisco, California, for the plaintiff-appellee.

Before: D. W. NELSON and FERNANDEZ, Circuit Judges, and REA, District Judge.*

D. W. NELSON, Circuit Judge.

Jan Nielsen, a former associate at Keck, Mahin & Cate, appeals the district court's order imposing sanctions against him. We have jurisdiction under 28 U.S.C. § 1291, and we reverse the award of sanctions and remand to the district court to determine whether Nielsen acted in bad faith.

## BACKGROUND

The district court sanctioned Nielsen for his role in defending Anthony Motor Company against breach of contract and breach of guaranty actions. Anthony Motor was a Honda dealership in Alameda County, California. It was co-owned by Rudolph Batarse, who acted as president of the company, his wife Naifeh Batarse, and his parents, Anthony and Esther Batarse. Primus Automotive Financial Services, a Tennessee corporation, financed Anthony Motor's car inventory pursuant to an agreement that provided for repayment of the advances at the time the cars were sold. In 1994, Anthony Motor went out-of-trust by failing to remit the amount owed on several cars.

Primus sued Anthony Motor for breach of contract on January 5, 1995, seeking $1,448,-961.92 in damages. The parties entered into a stipulated restraining order on January 17, 1995 that required Anthony Motor to deliver the proceeds from the sale of cars Primus had financed. In spite of the stipulated order, Anthony Motor not only failed to turn over existing proceeds but also continued to sell collateral in which Primus had a security interest without relinquishing funds. On March 16, 1995, Primus applied for an order to show cause why Anthony Motor should not be held in contempt for defying the court's order.

Kenneth Greene, a partner at Keck, Mahin & Cate, had assumed the representation of Anthony Motor on February 2, 1995; Nielsen assisted him throughout the course of the litigation. In response to Primus' attempt to enforce the stipulated order, Nielsen filed a motion to vacate it, and Greene submitted a supporting declaration asserting that Anthony Motor should not be required to turn over the funds because it had filed a $1.2 million personal surety bond guaranteed by Naifeh Batarse's parents. In the declaration, Greene also stated his belief that a trust fund earmarked for Primus contained "the proceeds from virtually all of the sales of vehicles." The district court denied Anthony Motor's motion to vacate the order on May 4, 1995. The court also issued an order to show cause why Anthony Motor should not be found in contempt and set a hearing for May 11, 1995 to determine compliance with the order.

---

* The Honorable William J. Rea, United States District Judge for the Central District of California, sitting by designation.

Anthony Motor filed a chapter 11 bankruptcy petition on May 9, 1995. On May 11, 1995, Rudolph Batarse appeared before the district court with his attorneys, Greene and Nielsen. The district court inquired about the location of the proceeds owed to Primus under the terms of the stipulated order and ordered Anthony Motor to· turn over the accumulated out-of-trust funds. Although it was ordering payment of a prepetition debt subject to pending bankruptcy proceedings, the district court stated that it would "worry about the Chapter 11 later on." Greene offered a check for $97,000, drawn on a trust fund held by the law firm, and he declared that Batarse had the remaining funds and was "ready, willing and able" to relinquish them. Batarse then wrote a check to Primus for $593,248.00. At the time, Batarse had less than $1,000 in his checking account.

When Primus informed the district court about the overdraft, the court entered a second order to show cause why Anthony Motor should not be sanctioned for contempt of court and scheduled a contempt sanction hearing for May 25, 1995. Primus also petitioned for relief from the automatic bankruptcy stay, but the bankruptcy court denied relief because it found that Anthony Motor's failure to pay "doesn't distinguish [Primus] from any other creditor in any other bankruptcy case."

On the day of the contempt hearing, the attorneys for Primus and Anthony Motor announced a settlement agreement to the court. Primus had agreed to request a continuance of the contempt hearing while they negotiated the details of the agreement. However, Anthony Motor subsequently objected to routine stipulations, sought additional settlement provisions, and contested the extent of Primus' attorney's fees. As a result, the parties made little progress toward settlement.

On September 8, 1995, Primus succeeded in obtaining relief from the automatic stay in bankruptcy court and then petitioned the district court to enter judgment and award sanctions against the defendants and defense counsel. Nielsen filed Anthony Motor's response to Primus' motion, in which he argued that Primus bore some responsibility for stalling the settlement negotiations. In a misguided effort to extend a basic principle of bankruptcy law, Nielsen also asserted that the court should not award sanctions on the basis of the overdraft because, in violation of the stay, "Primus forced Mr. Batarse to write a bad check" during a void proceeding. *See* 11 U.S.C. § 362(h) (stating that a creditor's violation of a stay is itself sanctionable conduct); *In re Schwartz*, 954 F.2d 569, 571–72 (9th Cir.1992) (holding that any judicial proceedings in violation of an automatic bankruptcy stay are void). When the district court took exception to his argument at the hearing, Nielsen explained that he didn't "excuse what Mr. Batarse did. . . . But it was clearly a violation of the stay to ask him to write a check on a prepetition account."

On November 7, 1995, the district court issued an order enforcing the settlement agreement between Primus and the Batarses, awarding judgment in favor of Primus for $1.6 ·million, and imposing $30,096 in sanctions against the Batarses, Greene, and Nielsen. The court stated that it was "appalled by the conduct of Rudolph Batarse and, especially, defense counsel Greene and Jan Nielsen." The judge singled out for censure Nielsen's argument that "Primus forced Batarse to write a bad check," and called his approach "outrageous, yet typical of counsel's conduct throughout these sorry proceedings."

Nielsen and Greene moved for reconsideration of the sanctions. At the hearing on February 1, 1996, Greene maintained that he had every reason to believe that Mr. Batarse had sufficient assets to cover his check and that he did not suggest or condone an overdraft. Nielsen apologized to the court and asserted yet again that he perceived the violation of the bankruptcy stay as a sufficiently serious offense to mitigate Mr. Batarse's writing of a bad check. On appeal, Nielsen has continued to insist that this theory finds support in bankruptcy law;· he has failed to appreciate that his argument both attempts to deflect blame for a clear violation of the court's orders and imputes some of that blame to the district court judge who ordered Batarse to issue the check. On February 2, 1996, the court denied both Nielsen's and

Greene's motions for reconsideration, and clarified that the clients, counsel, and the law firm were jointly and severally liable for sanctions. Keck, Mahin & Cate paid the sanctions in full, and Nielsen alone appeals the award of sanctions.

## STANDARD OF REVIEW

■ The district court's entry of sanctions is reviewed for an abuse of discretion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55, 111 S.Ct. 2123, 2138, 115 L.Ed.2d 27 (1991); *In re Keegan Management Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir.1996).

## DISCUSSION

■ In its decision, the district court did not enumerate the authority it relied upon to award sanctions. Primus had requested sanctions under 28 U.S.C. § 1927 and Rule 11, but neither provision squarely supports the district court's order. Section 1927, on its face, applies only to the conduct of lawyers, whereas here the sanctions were levied against both the clients and counsel without any findings allocating responsibility between them. Rule 11 imposes a duty on attorneys to certify that all pleadings are legally tenable and well-grounded in fact; it governs only papers filed with the court. *See* Fed. R.Civ.P. 11; *Chambers*, 501 U.S. at 41, 111 S.Ct. at 2130–31. Although Rule 11 would apply to Nielsen's offending motion, the court also invoked Greene and the clients' behavior in court along with the general conduct of the litigation. Therefore, the sum of the sanctionable conduct falls outside of the specific prohibitions of § 1927 and Rule 11, but within the court's inherent powers. *See id.* at 51, 111 S.Ct. at 2136 (finding reliance on inherent powers appropriate where "the conduct sanctionable under the Rules was intertwined within conduct that only the inherent power could address").

■ Although the district court failed to specify the authority for its order, we can deduce the source of its power for purposes of our review. The inherent powers of federal courts are those that "are necessary to the exercise of all others." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (quoting *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812)). The most common utilization of inherent powers is a contempt sanction levied to "protect[ ] the due and orderly administration of justice" and "maintain[ ] the authority and dignity of the court." *Cooke v. United States*, 267 U.S. 517, 539, 45 S.Ct. 390, 395–96, 69 L.Ed. 767 (1925). When a losing party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons," *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (quotation omitted), sanctions under the court's inherent powers may take the form of attorney's fees. Here, the focus of the district court's inquiry and decision makes the relevant authority clear, and we will assume that the court relied on its inherent powers. *See Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74–75 (3d Cir.1994) (stating that "the court need not exhaust all other sanctioning mechanisms prior to resorting to its inherent power" and suggesting that the reviewing court can "deduce from the circumstances" the authority on which the court relied); *Ordower v. Feldman*, 826 F.2d 1569, 1573 (7th Cir.1987) (finding that where defendants moved for sanctions against plaintiffs under § 1927, but district court awarded sanctions against plaintiffs and counsel, it was apparent that the court was proceeding under both Rule 11 and § 1927). *Compare Insurance Benefit Adm'rs, Inc. v. Martin*, 871 F.2d 1354, 1362 (7th Cir.1989) (reversing and remanding an award of sanctions because the district court failed to specify the authority for its order).

■ Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct "constituted or was tantamount to bad faith." *Roadway Express*, 447 U.S. at 767, 100 S.Ct. at 2465; *see also In re Keegan*, 78 F.3d at 436; *United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir.1986). Such a finding is especially critical when the court uses its inherent powers to engage in fee-shifting, as it did in this case. *See Chambers*, 501 U.S. at 47, 111 S.Ct. at 2134 ("[T]he narrow exceptions to the American Rule effectively limit a court's inherent power to

impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders.").

■■■■ A finding of bad faith is warranted where an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan*, 78 F.3d at 436 (citation omitted). A party also demonstrates bad faith by "delaying or disrupting the litigation or hampering enforcement of a court order." *Hutto v. Finney*, 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 2573 n. 14, 57 L.Ed.2d 522 (1978). The bad faith requirement sets a high threshold, and the district court's conclusions here fall short of the requisite finding. The court called the arguments in opposition to enforcing the settlement agreement "totally frivolous," identified the overdraft and Nielsen's attempt to explain it as "outrageous" and "inexcusable," and stated that it was "appalled by the conduct of Rudolph Batarse and, especially, defense counsel Greene and Jan Nielsen." Although we appreciate the frustration the court felt, we cannot "glean from the record whether this outrage stemmed from a belief that [Nielsen] acted in bad faith." *In re Mroz*, 65 F.3d 1567, 1576 (11th Cir.1995).

■■■■ The district court has "broad fact-finding powers" with respect to sanctions, and its findings warrant "great deference," *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir.1990) (en banc), but we "must know to what we defer." *Id.; see also Ho v. Martin Marietta Corp.*, 845 F.2d 545, 549–50 (5th Cir.1988) (holding that where "the justification underlying the decision is not readily apparent from the record, a prompt remand for such findings and conclusions will be made") (citation omitted). Moreover, this is not a case in which bad faith is so patent that we will infer the necessary finding. *Compare Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1051 (9th Cir.1985) (upholding sanctions for the strategic abuse of ethical rules, despite the lack of specificity in the district court's order, because the record was "replete with evidence of tactical maneuvers undertaken in bad faith" and "a complete understanding of the issues may be had [from the record] without the aid of separate findings") (quotation omitted).

■■■■ We recognize that the district court is intimately familiar with the course of the litigation and occupies the best position from which to determine whether to award sanctions. However, there are "factual and legal prerequisites" to the district court's exercise of its broad power. *Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir.1989). We insist on the finding of bad faith because it ensures that "restraint is properly exercised," *id.*, and it preserves a balance between protecting the court's integrity and encouraging meritorious arguments. *See Roadway Express*, 447 U.S. at 764, 100 S.Ct. at 2463 (noting that because "inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion").

■■■■ Accordingly, even though we assume the appropriate authority for sanctions, we remand to the district court to develop more detailed findings on whether Nielsen acted in bad faith. *See Barnd v. City of Tacoma*, 664 F.2d 1339, 1343 (9th Cir.1982) (remanding to the district court to either withdraw the personal sanctions or enter specific findings of fact on whether defense counsel acted in bad faith).

■■■■ In assessing Nielsen's conduct for evidence of bad faith, the district court must determine whether his argument concerning the issuance of the overdraft or other aspects of his defense of Anthony Motor were both reckless and frivolous. *See Keegan*, 78 F.3d at 436–37. Nielsen's argument clearly lacks merit, but forceful and effective representation often will call for innovative arguments. For this reason, sanctions should be reserved for the "rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Engineers Pension Trust v. A–C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988). Furthermore, Nielsen has argued that he did not exercise control over the general litigation strategy and that the particular arguments he made did not delay the

settlement. We note that any sanctions imposed against him should be based solely on his "own improper conduct without considering the conduct of the parties or any other attorney." *Martin v. Brown,* 63 F.3d 1252, 1265 (3d Cir.1995).

## CONCLUSION

Sanctions not only may have a severe effect on the individual attorney sanctioned but also may deter future parties from pursuing colorable claims. Because the district court's inherent powers are so potent, we require courts levying sanctions to assess an attorney's individual conduct and to make an explicit finding that he or she acted in bad faith. The district court did not make such a finding here, and we reverse the award of sanctions and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.