NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No. NV-11-1628-DKiPa |
| | ) |
| RICHARD E. MARIS and DEBORAH HARRIS, | ) Bk. No. 09-12172-MKN |
| | ) |
| Debtors. | ) |
| _____ | ) |
| | ) |
| BARRY LEVINSON, Esq., | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| PENGILLY, ROBBINS, SLATER & BELL; JAMES F. LISOWSKI, Chapter 7 Trustee; UNITED STATES TRUSTEE, | ) |
| | ) |
| | ) |
| Appellees. | ) |
| _____ | ) |

Argued and Submitted on June 15, 2012
at Las Vegas, Nevada

Filed - June 20, 2012

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Mike K. Nakagawa, Bankruptcy Judge, Presiding

Appearances:  Appellant, Barry Levinson, Esq., in pro per;
Robert T. Robbins, Esq. of Pengilly, Robbins, Slater &
Bell, for the Appellee, Pengilly, Robbins, Slater &
Bell.

---

[1]     This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

1

Before: DUNN, KIRSCHER, and PAPPAS, Bankruptcy Judges.

After his former employer, Western Pride Construction, LLC ("WPC"), obtained a state court judgment ("Judgment") in excess of $1,000,000 against him, Richard Maris filed a chapter 7[2] bankruptcy petition ("Bankruptcy Case") and stipulated that the Judgment was nondischargeable pursuant to § 523(a)(9). Thereafter, the bankruptcy court approved the chapter 7 trustee's ("Trustee") application to employ WPC's counsel, the law firm of Pengilly Robbins Slater & Bell ("Pengilly"), pursuant to § 327(e), as special counsel to file and prosecute a malpractice claim ("Malpractice Claim") against Barry Levinson, the attorney who had represented Mr. Maris in the litigation which led to the entry of the Judgment. On Mr. Levinson's motion, the bankruptcy court vacated the order authorizing the trustee's employment of Pengilly under § 327(e), with leave to reapply under § 327(c). Because the bankruptcy court denied Mr. Levinson's additional request that it impose monetary sanctions on Pengilly, Mr. Levinson appealed.

We AFFIRM.

## I. FACTS

Until 2005, Mr. Maris owned an electrical contracting business, Regency Electric, Inc. ("Regency"). On March 25, 2005,

---

[2] Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

Mr. Maris entered into a purchase agreement and employment agreement ("Employment Agreement") with WPC, pursuant to which WPC purchased Regency from Mr. Maris and hired Mr. Maris as the Vice President of WPC's electrical division for an initial period of three years. Under the Employment Agreement, Mr. Maris was provided a vehicle ("Vehicle") for use in performing his services for WPC. The Employment Agreement authorized WPC to terminate Mr. Maris' employment during the first year of employment without full severance pay for the remaining term "only in the event of a serious moral, ethical, criminal or libelous act."

Mr. Maris' employment with WPC commenced on April 4, 2005. On July 8, 2005, while driving WPC's Vehicle, Mr. Maris was involved in an automobile accident ("Collision") which resulted in the death of Monica Meily, the driver of the vehicle with which he collided. At the time of the Collision, which occurred at 11:40 p.m., Mr. Maris was intoxicated, having just left a bar where he had been drinking.

On September 5, 2005, Mr. Maris was charged with Involuntary Manslaughter in connection with Ms. Meily's death in the Collision. Mr. Maris signed an "Agreement to Appear in Court and to Waive Extradition After Admission to Bail" in the criminal matter on September 10, 2005. Mr. Maris pled guilty to the Involuntary Manslaughter charge on April 11, 2007.

When he returned to work at WPC after the Collision, Mr. Maris reported to WPC that he was not at fault for the Collision. At no time did Mr. Maris inform WPC of the true facts of

3

the Collision.

Following the Collision, Mr. Maris' job performance declined. In an effort to get pending electrical contracts "back on track," WPC required Mr. Maris to supervise from the field rather than from his desk.

On September 12, 2005, Mr. Maris requested a meeting ("September 12 Meeting") with Romy Pantea, the Managing Member of WPC, to discuss the Employment Agreement. In the week prior to the request, Mr. Maris had consulted with Mr. Levinson for advice on enforcing the Employment Agreement. At the September 12 Meeting, Mr. Maris told Mr. Pantea he no longer would supervise the pending electrical jobs except from his desk. Because WPC refused to authorize Mr. Maris to perform his supervisory role other than in the field, Mr. Maris resigned. On September 22, 2005, Mr. Maris sued WPC in state court ("State Court Litigation") for breach of the Employment Agreement. Mr. Levinson represented Mr. Maris in the State Court Litigation.

WPC, represented by Pengilly, filed counterclaims against Mr. Maris in the State Court Litigation for implied and equitable indemnity with respect to its potential liability to Ms. Meily's estate, and for other damages it incurred as a result of the Collision. WPC had been notified on July 26, 2005, that Ms. Meily's heirs intended to bring legal action against WPC and its principals, based upon their alleged liability with respect to the Collision. WPC settled the threatened litigation in August of 2006, by paying, with funds provided by its insurance carrier, $1 million to

4

Ms. Meily's estate and her heirs. In addition, after the Vehicle was determined to be a total loss and not reparable as a result of the Collision, WPC also paid $25,394.03 to satisfy the secured obligation on the Vehicle.

A nonjury trial was held in the State Court Litigation on February 8, 2008, following which the state court, on April 8, 2008, issued its findings of fact and conclusions of law, as part of the Judgment. The state court found that Mr. Maris, not WPC, had breached the Employment Agreement, (1) when he took the Vehicle, "went drinking at a bar," and thereafter drove the Vehicle and caused the Collision that resulted in Ms. Meily's death; and (2) when he became incapable of performing his job duties because he entered a state of depression following the Collision.

The state court also determined that WPC had an absolute right to indemnity from Mr. Maris as a result of his tortious conduct in relation to the Collision, and entered the Judgment in favor of WPC in the amount of $1,034,738.30, which represented the $1 million WPC paid (through its insurer) to Ms. Meily's heirs, $25,394.03 to pay off the Vehicle Mr. Maris had wrongfully converted to his own use, and $9,344.27 to reimburse WPC for attorneys fees incurred to the law firm that had defended WPC against the claims of Ms. Meily's heirs.

On behalf of Mr. Maris, Mr. Levinson filed an appeal ("State Court Appeal") from the Judgment on May 7, 2008. However, after Mr. Maris filed his Bankruptcy Case on February 19, 2009, Mr. Levinson withdrew from his representation of Mr. Maris in the

State Court Appeal. The State Court Appeal thereafter was dismissed, without prejudice, on May 20, 2009.

On May 21, 2009, Pengilly filed a complaint in the Bankruptcy Case ("Adversary Proceeding") seeking a determination that Mr. Maris' debt to WPC represented by the Judgment was nondischargeable pursuant to § 523(a)(9) and/or § 523(a)(6). The Adversary Proceeding was dismissed February 10, 2010, on the stipulation of WPC and Mr. Maris ("Stipulation").

In the course of negotiating the Stipulation, Mr. Maris became aware for the first time that he held the Malpractice Claim against Mr. Levinson in connection with the Judgment. On December 10, 2009, Mr. Maris filed an amended Schedule B to include the Malpractice Claim, with an unknown value, as an asset of his bankruptcy estate. The Stipulation provided that Mr. Maris' debt to WPC was nondischargeable pursuant to § 523(a)(9), but that WPC agreed to dismiss the Adversary Proceeding with prejudice based upon "a settlement agreement heretofore reached between the parties" ("Settlement Agreement").

The Settlement Agreement was not attached to the Stipulation, nor was it ever filed in the Adversary Proceeding. In fact, the Settlement Agreement never was reduced to writing:

> [Mr. Maris] agreed that if the [Malpractice Claim] reverted to him, he would pursue it and pay an unspecified portion of any proceeds to [WPC]. [Mr. Maris] also agreed that he would consider employing [Pengilly] to pursue the [Malpractice Claim]. However, this agreement was never memorialized in writing. In the [Stipulation], [Mr. Maris] stipulated that the debt was nondischargeable. The [adversary proceeding] was dismissed with prejudice and no judgment of nondischargeability was entered.

6

Pengilly Opposition to the Levinson Motion at 4:4-9.

On March 24, 2010, Pengilly filed a motion to compel the Trustee to abandon the Malpractice Claim ("Abandonment Motion"), which the Trustee opposed. The bankruptcy court denied the Abandonment Motion by its order entered on April 12, 2010; however, that order permitted the Trustee to file an application to employ Pengilly to pursue the Malpractice Claim.

On behalf of Mr. Maris and the Trustee, Pengilly commenced litigation against Mr. Levinson on the Malpractice Claim on April 7, 2010, immediately prior to the expiration of the limitations period, without having obtained the approval of the bankruptcy court for its employment. On September 18, 2010, the Trustee filed, pursuant to § 327(e), his ex parte application to employ ("Employment Application") Pengilly as special counsel, nunc pro tunc as of April 6, 2010. No disclosure was made in the Employment Application that the litigation on the Malpractice Claim had been commenced. On September 22, 2010, the bankruptcy court authorized the employment of Pengilly as requested ("Employment Order"). Under the fee agreement approved in the Employment Order, any recovery in the litigation on the Malpractice Claim was to be divided: 3% to the Trustee, 33-40% to Pengilly, and the balance to WPC on account of its nondischargeable unsecured claim.[3]

On April 20, 2011, Mr. Levinson filed a motion ("Levinson

---

[3] WPC's Judgment represents approximately 89% of the unsecured claims Mr. Maris scheduled in the Bankruptcy Case.

7

Motion") to disqualify Pengilly as special counsel on the basis that Pengilly was not eligible for employment pursuant to § 327(e) as provided in the Employment Order, because Pengilly never had represented Mr. Maris as is required by the express terms of § 327(e). In the Levinson Motion, Mr. Levinson also preemptively asserted there was no basis upon which the bankruptcy court could approve the employment of Pengilly as special counsel under either § 327(a) or § 327(c). Finally, the Levinson Motion requested that the bankruptcy court impose monetary sanctions pursuant to Rule 9011 against Pengilly and the Trustee based upon their alleged bad faith in connection with the Employment Application, and on the basis that Pengilly had violated several ethical rules, including those relating to honesty and as to conflicts of interest, in connection with the request for entry of the Employment Order.

Following extensive briefing by the partes, the Levinson Motion was heard on July 20, 2011. On October 25, 2011, the bankruptcy court entered its order ("October 25 Order") vacating the Employment Order. However, the October 25 Order authorized the Trustee to seek approval of the employment of Pengilly, nunc pro tunc as of April 6, 2010, as special counsel pursuant to § 327(c). Finally, the October 25 Order provided that no sanctions against Pengilly or the Trustee were awarded to Mr. Levinson. In support of its determination to deny a sanctions award to Mr. Levinson, the bankruptcy court stated that "sanctions against Pengilly or the Trustee are not appropriate as the record does not sufficiently establish that their prior efforts to employ Pengilly was [sic] in

8

bad faith."

Mr. Levinson timely filed his Notice of Appeal on November 4, 2011.

## II.   JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A).  We have jurisdiction under 28 U.S.C. § 158.

## III.   ISSUE

Whether the bankruptcy court abused its discretion when it denied Mr. Levinson's motion for the imposition of monetary sanctions against Pengilly.[4]

## IV.   STANDARDS OF REVIEW

We review the bankruptcy court's refusal to impose sanctions

---

[4]    In his Opening Brief on Appeal, Mr. Levinson asserted seven issues on appeal.  The first six issues relate to the alleged error or abuse of discretion by the bankruptcy court in allowing the Trustee to continue to seek to employ Pengilly, rather than disqualifying Pengilly as ineligible for employment outright.  As contemplated by the October 25 Order, the Trustee filed an application for the nunc pro tunc employment of Pengilly pursuant to § 327(c).  On January 30, 2012 ("January 30 Order"), the bankruptcy court denied the Trustee's subsequent application to employ Pengilly and directed the Trustee to hire alternate counsel.  Thereafter, on April 3, 2012, our motions panel entered an order which provided that any issue relating to further efforts to employ Pengilly was moot, and limiting the issue on appeal to the denial of Mr. Levinson's request for sanctions only.

In his Reply Brief on Appeal, Mr. Levinson concedes that the only remaining issue on appeal is "Whether the Bankruptcy Court committed an error of law or an abuse of discretion in not awarding sanctions against [Pengilly] for entering into an obviously conflicted and unethical relationship."  It thus appears that Mr. Levinson is not appealing the bankruptcy court's failure to enter a sanctions award against the Trustee, as requested in the Levinson Motion.

9

for an abuse of discretion. See Classic Auto Refinishing v. Marino (In re Marino), 37 F.3d 1354, 1358 (9th Cir. 1994)(reviewing denial of sanctions under Rule 9011). We apply a two-part test to determine whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested. Id. Then, we review the bankruptcy court's fact findings for clear error. Id. at 1262 & n.20. We must affirm the bankruptcy court's fact findings unless we conclude that they are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" Id. at 1262. The bankruptcy court has "broad fact-finding powers with respect to sanctions, and its findings warrant great deference . . . ." Primus Auto. Fin. Serv., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997)(quoting Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1366 (9th Cir. 1990)(en banc))(internal quotation marks omitted).

We review for clear error the bankruptcy court's fact findings related to the existence of bad faith. Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1223 (9th Cir. 1999).

## V. DISCUSSION

In the Levinson Motion, Mr. Levinson requested that the bankruptcy court impose monetary sanctions against Pengilly, either pursuant to Rule 9011 (the Civil Rule 11 analog applicable in bankruptcy contested matters), or pursuant to the bankruptcy court's equitable powers under § 105(a).

10

**A.** <u>Mr. Levinson is not entitled to an award of sanctions under Rule 9011</u>.

Rule 9011(b) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a . . . pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, --
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

On the record before us, we are unable to conclude that the bankruptcy court erred when it did not find a basis to impose sanctions under Rule 9011(b). First, nothing in the record reflects that the Employment Application was presented for an "improper purpose." The Trustee merely was seeking to hire counsel to prosecute the Malpractice Claim. Second, the bankruptcy court approved the Employment Application in the first instance, arguably precluding a determination that the legal contention presented in the Employment Application, i.e., that Pengilly met the requirements for employment pursuant to § 327(e), was not warranted by existing

11

law or by a non-frivolous extension of existing law. The simple reality is that the Trustee, Pengilly, and the bankruptcy court each omitted from their reading of § 327(e) the requirement that the proposed special counsel previously must have represented Mr. Maris. Third, the Declaration of Robert T. Robbins, a Pengilly partner, filed in support of the Employment Application, (1) disclosed Pengilly's prior representation of WPC both in the State Court Litigation and in the Adversary Proceeding; (2) disclosed that Pengilly "appears on Schedule F as a representative of [WPC] holding a claim totaling $1,037,738.30"; (3) affirmatively acknowledged that Pengilly represented an interest adverse to Mr. Maris in the State Court Litigation; and (4) stated the belief that in the proposed representation, Pengilly did not hold an interest adverse to Mr. Maris or the bankruptcy estate "with respect to the matter on which [Pengilly] is to be employed." Thus, Pengilly's connection with WPC was substantially disclosed to the bankruptcy court.

The bankruptcy court acknowledged in the October 25 Order that the Employment Order had been entered in error and vacated that order. The bankruptcy court, right or wrong, made a further finding that Pengilly's concurrent representation of WPC did not appear to create an actual conflict of interest with the bankruptcy estate, and further determined, that "Pengilly's employment as special counsel to represent the bankruptcy estate for the limited purpose of prosecuting the [Malpractice Claim] likely would be permitted by Section 327(c)." Ultimately, however, after this appeal was filed, the bankruptcy court denied the employment of Pengilly altogether

12

and directed the Trustee to find other counsel to prosecute the Malpractice Claim. Under these facts, where the bankruptcy court, once explicitly and once implicitly, determined that it had erred in its interpretation of § 327, we cannot see a basis under Rule 9011(b) to impose sanctions against Pengilly.

In addition, in the Rule 9011 context, precise procedures must be followed. Polo Bldg. Grp., Inc. v. Rakita (In re Shubov), 253 B.R. 540, 545 (9th Cir. BAP 2000). Specifically and primarily relevant in this appeal, the "safe harbor" provision of Rule 9011(c)(1)(A) required Mr. Levinson to provide Pengilly with an opportunity to withdraw or correct the alleged improper Employment Application before submitting his motion for sanctions to the bankruptcy court. Nothing in the record reflects that Mr. Levinson complied with Rule 9011(c)(1)(A) prior to filing the Levinson Motion.

B. **Mr. Levinson is not entitled to an award of sanctions under § 105(a).**

The bankruptcy court had the inherent authority, implicitly recognized in § 105(a),[5] to impose sanctions for any bad faith

---

[5] Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

13

conduct engaged in by Pengilly. Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.), 77 F.3d 278, 284 (9th Cir. 1996). In order to do so, however, the bankruptcy court was required to make an explicit finding that Pengilly had engaged in conduct tantamount to bad faith. Knupfer v. Lindblade (In re Dyer), 332 F.3d 1178, 1196 (9th Cir. 2003). Bad faith includes a broad range of willful, improper conduct, but requires something more egregious than mere negligence or recklessness. Fink v. Gomez, 239 F.3d 989, 992-94 (9th Cir. 2001).

It is clear that the bankruptcy court understood and applied the correct legal standard in ruling on Mr. Levinson's request that monetary sanctions be imposed against Pengilly. As we noted previously, the bankruptcy court made an express finding that the record did not sufficiently establish that Pengilly's prior efforts to obtain the Employment Order were in bad faith. Where the bankruptcy court has applied the correct legal standard, we must affirm the bankruptcy court's finding with respect to the bad faith issue unless we conclude that finding is "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" United States v. Hinkson, 585 at 1262. For the reasons set forth above in our discussion of sanctions under Rule 9011(b), we conclude that the bankruptcy court did not clearly err when it found that Pengilly did not act in bad faith in seeking court-authorized employment to prosecute the Malpractice Claim.

14

## VI.   CONCLUSION

The bankruptcy court did not abuse its discretion when it denied Mr. Levinson's request that monetary sanctions be awarded against Pengilly.  We AFFIRM.

15