**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROLANDO HERNANDEZ, | No. 13-35131 |
| Plaintiff, | D.C. No. 3:04-cv-05539-BHS |
| v. | |
| CITY OF VANCOUVER, | MEMORANDUM[*] |
| Defendant - Appellee, | |
| And | |
| THOMAS S. BOOTHE, | |
| Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding[**]

Argued and Submitted May 12, 2014
Submission Withdrawn June 26, 2014
Resubmitted July 8, 2015
Seattle, Washington

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     Judge Ronald B. Leighton was the presiding judge during the events that led to this appeal.  He recused himself after the contempt proceedings.

Before: O'SCANNLAIN, KLEINFELD, and BERZON, Circuit Judges.


Boothe, an attorney, was found in contempt of court and sanctioned $145,765.43, in the course of an employment discrimination case he tried for his client, Rolando Hernandez. He promptly filed a notice of appeal, in his own name, from the sanction, although no final judgment had been entered in the underlying case. His appeal was premature, under our decision in Cato v. Fresno City, 220 F.3d 1073 (9th Cir. 2000) (per curiam), and Stanley v. Woodford, 449 F.3d 1060 (9th Cir. 2006), so at the time he filed it, we lacked jurisdiction to decide it. Subsequently, the employment discrimination suit was resolved by a jury verdict in favor of his client Hernandez for $1,284,000, upon which final judgment was entered. Post-trial motions, appeal and cross-appeal of the underlying case, and mediation delayed completion, but they are all over. During all these procedural events, we withdrew this case from submission, but subsequently resubmitted it. In this circuit, under Cato, the jurisdictional defect in Boothe's appeal of the sanctions against him was cured by the entry of final judgment in the underlying action. See Cato, 220 F.3d at 1074–75.

The monetary sanction was imposed for making faces in court, leading to a mistrial, and the contempt citation was for a hallway conference Boothe had with the City's in-house attorney, Debra Quinn. Ms. Quinn was an assistant city attorney and was counsel of record for the City, along with outside counsel. Apparently the City contemplated calling her as a witness as well. She wrote a letter to the judge, stating "I have been at this trial as the City's representative and am a client of Christie Law Group," referring to the City's outside counsel. Boothe suggested to her in the hallway conference that if she chose to testify, she might be personally embarrassed by revelation of rumors he had heard. She said she felt "stunned," "completely shocked," "anxious and terrified about testifying," and interpreted Boothe's hallway remarks as "a clear intent to intimidate me and prevent me from testifying."

The "making faces" issue arose from notes sent to the judge by two jurors. They said they saw Boothe move his head and mouth in ways that looked as though he was coaching witnesses as they testified.

Citing the hallway conversation and the "witness coaching," the district judge declared a mistrial. The court, based on the City's claims, ordered Boothe to

3

show cause why he should not be held in civil contempt for "obstruction of justice/witness tampering . . . and coaching witnesses," and "[s]uborning perjury" with respect to a proposed exhibit "which there is reason to believe may have been forged." The City dropped its "forged exhibit" claim, explaining that it "took Mr. Harmon's deposition and [was] persuaded there is nothing there." The reference to "witness coaching" meant the alleged nods, headshakes, and mouthing words during testimony. The alleged "obstruction of justice/witness tampering" was the hallway conversation with Ms. Quinn, the assistant city attorney.

The two witnesses allegedly "coached" testified at the evidentiary hearing on the order to show cause. They both testified that they looked at whichever attorney was asking the questions, and did not look at Boothe to try to figure out how to answer the other attorney's questions. Regarding the hallway conversation, Boothe and Quinn testified to different accounts of what was said, and the judge accepted Quinn's account.

The judge found that the "making faces" was not contempt, because it was "not bad faith" (Boothe testified to a medical condition that caused uncontrollable grimacing and other body movements), but was a "sanctionable event for wasting

4

the court's time." As for the hallway conversation, the district court found that Boothe had acted in bad faith, describing his behavior as "beyond outrageous," "totally frivolous," "off the chart," "out of bounds," "smarmy," and "inexcusable." The court issued the contempt citation with "no further sanction," because reimbursement of defense expenses ($145,765.43) for the mistrial was "enough." The court's explanation at the time it ordered a mistrial, and the word "further" when it imposed the sanction, means that Boothe was ordered to pay the money both for making faces, though he was not held in contempt for that, and because of the hallway conversation, for which he was held in contempt.

"Before awarding sanctions under its inherent powers, . . . the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" Primus Automotive Financial Services, Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (quoting Roadway Exp., Inc. v. Piper, 447 U.S. 752, 767 (1980)). "Such a finding is especially critical when the court uses its inherent powers to engage in fee-shifting . . . ." Id. "[S]anctions in civil contempt proceedings may . . . be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the

complainant for losses sustained." United States v. United Mine Workers of Am., 330 U.S. 258, 303–04 (1947).

Because the district court did not find that Boothe had made faces in bad faith, such conduct was not sanctionable. The district court thus erred in basing its monetary sanction on the incident. Although Boothe's hallway conversation was found to be in bad faith, the district court's rationale for imposing monetary sanctions on Boothe was not entirely clear. The City had claimed that the incident constituted the intimidation of a witness, Assistant City Attorney Quinn. Ms. Quinn's letter to the court that precipitated the show cause order said she was a "represented party," a "client of Christie Law Group." The record seems to undercut such a claim. Ms. Quinn had appeared and answered on behalf of the City, as Assistant City Attorney. Seven months later, she filed "notice of association of counsel," as "Attorney for Defendants." She never withdrew as counsel for the City. She testified at the contempt hearing that she had an "attorney client relationship" and was "represented by" her co-counsel, but not to any relationship where she was represented in any personal matter. Her testimony is quite clear that by "client" she meant that she was the "city's representative," not that she was a client herself. Boothe testified that he was talking to her in the hall

6

as "liaison at the city attorney's office," not as a witness.  Ms. Quinn was not a party, and her supposed attorney did not appear for her, just for the City.

Though the district court found that the hallway conversation occurred as Ms. Quinn testified, it is hard to understand how it could be "witness" intimidation, for which the contempt citation was imposed, as opposed to intimidation of opposing counsel.  The City's associated outside counsel had listed Ms. Quinn as a potential witness "to testify regarding the City of Vancouver's response to plaintiff's complaints, allegations and grievances, as well as any other matters within her knowledge put at issue at trial."  The City does not claim that she actually testified.

Washington, like other states, provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless . . . the testimony relates to an uncontested issue."  Wash. R. Prof'l Conduct 3.7(a)(1).  Since Ms. Quinn remained on the record throughout the trial as co-counsel of record for the City, and assisted outside counsel at counsel table, and would in all likelihood have been disqualified from doing so if she were likely to be a witness to a contested issue, it follows that she probably could not have been a planned

7

witness for any contested issue.  Thus it would seem difficult to establish a causal link between the hallway conversation and the mistrial.  If a monetary sanction is to be imposed, the district court must justify its purpose.

We reverse the district court's monetary sanction in so far as it resulted from Boothe making faces.  We vacate the contempt order and associated monetary sanction and remand for further consideration of the purported "witness intimidation" incident.  Each party shall bear its own costs on appeal.

REVERSED, VACATED, REMANDED.