**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 31 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| VITALY IVANOVICH SMAGIN, | Nos. 16-55502 |
| | 16-56749 |
| Petitioner-Appellee, | 17-56467 |
| v. | D.C. No. |
| | 2:14-cv-09764-R-PLA |
| ASHOT YEGIAZARYAN, AKA Ashot Egiazaryan, | Central District of California, Los Angeles |
| Respondent-Appellant. | |
| | ORDER |

Before: ROGERS,[*] BYBEE, and WATFORD, Circuit Judges.

The panel judges have voted to deny Smagin's Petition for Rehearing.

Judges Bybee and Watford voted to deny the Petition for Rehearing En Banc, and

Judge Rogers recommended denying the Petition for Rehearing En Banc.

The full court has been advised of the petition for rehearing en banc and no

judge has requested a vote on whether to rehear the matter en banc. Fed. R. App.

P. 35.

---

[*] The Honorable John M. Rogers, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Smagin's petition for rehearing and petition for rehearing en banc, filed July 2, 2018, is DENIED.

Yegiazaryan's Motion to Modify the Memorandum Disposition is GRANTED.

The Memorandum Disposition filed May 18, 2018 is amended as follows:

1.     At page 6, replace "On August 3, 2017," with "Smagin also simultaneously domesticated and enforced the Award in Liechtenstein against Yegiazaryan's beneficiary interest in Alpha Trust, which is attached and frozen. That ruling is now on appeal.  In concurrent, separate enforcement proceedings against Yegiazaryan's *non-beneficiary* interests,"

2.     At page 6, replace "issued a decision, finding that" with "issued a decision on August 3, 2017.  The Liechtenstein lower court had found that"

3.     At page 6, delete "The Court of Appeal concluded that"

4.     At page 7, insert "But the Court of Appeals rejected Smagin's effort to attach Yegiazaryan's non-beneficiary interests." before the sentence beginning "Relying on this ruling,"

5.     At page 7, replace "granted Smagin a freeze order on the Alpha Trust pending his appeal" with "granted Smagin a stay of its August 2017 ruling, pending appeal"

No future petitions for panel rehearing and rehearing en banc shall be entertained.

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| VITALY IVANOVICH SMAGIN, | Nos. 16-55502 |
| | 16-56749 |
| Petitioner-Appellee, | 17-56467 |
| v. | |
| ASHOT YEGIAZARYAN, AKA Ashot Egiazaryan, | D.C. No. 2:14-cv-09764-R-PLA |
| Respondent-Appellant. | AMENDED MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted April 11, 2018
Pasadena, California

Before: ROGERS,[**] BYBEE, and WATFORD, Circuit Judges.

In an arbitration between Vitaly Smagin and Ashot Yegiazaryan, the London

Court of International Arbitration awarded Smagin about $72 million in damages

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable John M. Rogers, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

plus about $20 million in interest and fees ("the Award"). The Award was confirmed, and Yegiazaryan raises no substantive challenge to the confirmation. Three orders by the district court are at issue in these consolidated appeals: (1) an order of attorneys' fees against Yegiazaryan; (2) a postjudgment injunction against Yegiazaryan freezing some $115 million; and (3) a turnover order against Yegiazaryan regarding a Liechtenstein trust that is now the subject of ongoing proceedings in the Liechtenstein courts. Yegiazaryan appeals those three rulings. We have jurisdiction under 28 U.S.C. § 1291.

We presume the parties' familiarity with the facts and procedural history.

1.     Attorneys' Fees

We review an imposition of attorneys' fees for abuse of discretion. *Primus Auto. Fin. Serv., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997). Where a court orders the payment of attorneys' fees without identifying the basis for its authority, we presume it acted under its inherent powers, *id.*, which requires "mak[ing] an explicit finding that counsel's conduct constituted or was tantamount to bad faith," *id.* (citation and internal quotation marks omitted); *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) ("[A] specific finding of bad faith . . . must precede any sanction under the court's inherent powers.") (citation and internal quotation marks omitted); *see also Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186

2

(2017).  These standards help ensure that attorneys' fees are ordered "only in exceptional cases and for dominating reasons of justice."  *Beaudry Motor Co. v. Abko Props., Inc.*, 780 F.2d 751, 756 (9th Cir. 1986) (citation omitted).  The district court granted Smagin's request for attorney's fees without entering any finding on bad faith.  This was an abuse of discretion.

We vacate the award of attorneys' fees and remand for the district court to reconsider the award under the appropriate standard.  If the district court enters an award of attorneys' fees, it shall state the source of its authority and enter detailed findings of fact setting forth the basis for its award.  *See Primus*, 115 F.3d at 648.

2.     Postjudgment Injunction

The district court entered judgment for Smagin on March 31, 2016.  On October 13, 2016, Smagin sought ex parte emergency postjudgment injunctive relief, identifying a California state court asset freeze in unrelated family law proceedings involving Yegiazaryan that was to expire the next day.  The state court asset freeze restrained Yegiazaryan from transferring or dissipating monies he received as an award from the unrelated "Kerimov" arbitration.  Those funds were allegedly placed in a Monegasque bank account held by the "Alpha Trust," which Yegiazaryan formed under Liechtenstein law in 2015 in anticipation of receipt of the Kerimov funds.  Dr. Thomas Wilhelm of CTX Treuhand AG serves as Trustee

of the Alpha Trust, and Yegiazaryan enjoys various rights as Protector, Settlor, Asset Manager, and Beneficiary. The district court found that Smagin would be "left without protection from Mr. Yegiazaryan's duplicity," in light of evidence of Yegiazaryan's practice of moving and concealing assets, and so the court ordered that he and those under his control refrain from any action to "transfer, assign, conceal, diminish, encumber, hypothecate, or dissipate or in any way dispose of" the Kerimov funds. Yegiazaryan appeals.

The palette of remedies available to a court is a product of that court's jurisdiction. Here, Smagin brought a Petition to Confirm the Award against Yegiazaryan in California, where Yegiazaryan now lives. Where a district court exercises in personam jurisdiction over a judgment debtor and where it identifies a real risk that without injunctive relief, the judgment debtor might dissipate or secret away funds, courts have upheld narrowly tailored postjudgment remedial measures of this sort under its "ancillary enforcement jurisdiction." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996); *Ex parte Flippin*, 94 U.S. 348, 350 (1876) ("Process subsequent to judgment is as essential to jurisdiction as process anterior to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.") (citation omitted); *see Hilao v. Estate of Marcos*, 95 F.3d 848, 854–55 & n.11 (9th Cir. 1996) (noting

4

cases that "upheld the use of contempt in the enforcement of money judgments" where "state law allowed that procedure"); *Sec. Tr. & Sav. Bank v. S. Pac. R. Co.*, 6 Cal. App. 2d 585, 589 (Cal. Ct. App. 1935) ("The power to enforce their decrees is necessarily incident to the jurisdiction of courts. Without such power, a decree would in many cases be useless. All courts have this power, and must necessarily have it; otherwise they could not protect themselves from insult, or enforce obedience to their process. Without it they would be utterly powerless.") (internal quotation marks and citation omitted).

Certainly this power is to be exercised carefully. *See Hilao*, 95 F.3d at 855 (noting that even in light of (1) the large "size of the judgment" of nearly $2 billion; (2) the "prominent figures" as litigants; (3) the distant location of assets; and (4) the "uncooperativeness of the judgment debtor," such are not "exceptional circumstances . . . that would justify a federal court's use of a procedure other than a writ of execution to enforce a money judgment"). Here the district court identified a clear, case-specific risk that Yegiazaryan might evade the court's jurisdiction or contravene its judgment by funneling the Kerimov funds through a

5

reshuffled deck of shell companies and bank accounts across the Caribbean, Cyprus, Monaco, Liechtenstein, or whatever other amicable havens he finds.[1]

We affirm the district court's postjudgment injunction.

3.  Turnover Order

Smagin also simultaneously domesticated and enforced the Award in Liechtenstein against Yegiazaryan's beneficiary interest in Alpha Trust, which is attached and frozen.  That ruling is now on appeal.  In concurrent, separate enforcement proceedings against Yegiazaryan's *non-beneficiary* interests, the Princely Court of Appeal of the Principality of Liechtenstein (the "Liechtenstein Court of Appeal") issued a decision on August 3, 2017.  The Liechtenstein lower court had found that under the Declaration of Trust, Yegiazaryan was sole "Settlor," sole "Protector," sole "Beneficiary," and sole "Asset Manager" with "expressly transferable" so-called protector rights, and an "all-encompassing position of power" and "veto right."  Yegiazaryan "had not really given up his assets," because he "directed and controlled the entire management of Alpha Trust

---

[1] We also reject Yegiazaryan's claim that the injunction constitutes a violation of his due process rights because it freezes some $20 million more than the amount of the judgment.  Yegiazaryan had fair notice that injunctive relief of this form could issue when Smagin first applied for such on September 16, 2015. Although high in absolute terms, it appears to be a reasonable and measured cushion that extends by its terms only to Yegiazaryan's and his agents' actions vis-à-vis the Kerimov funds.

(formally also) due to his position as protector, for that position allowed him at his sole discretion to appoint or remove the trustee without any reason, and the entire management of the trust by the trustee required the prior express consent of the protector." *Smagin v. Yegiazaryan, et al.*, 08 EX.2016.5802, Order No. 36 (Princely Court of Appeal Aug. 3, 2017) (Liecht.). But the Court of Appeals rejected Smagin's effort to attach Yegiazaryan's non-beneficiary interests. Relying on this ruling, Smagin applied to the district court for a turnover order under California law, seeking an order commanding Yegiazaryan to turn over the assets of the Alpha Trust. The district court issued the turnover order on September 20, 2017, noting that the California Enforcement of Judgments Law permits a judgment creditor with a writ of execution to obtain a turnover order, which shall be issued upon "a showing of need for the order," for which a refusal to pay a judgment qualifies. CAL. CIV. PROC. CODE § 699.040(b). The district court further held that such an order may expand to all of "the debtor's interest in the property in the possession or under the control of the judgment debtor or a third person" without limit as to property type or location, because the court's jurisdiction is over Yegiazaryan himself. In November 2017, the Liechtenstein Court of Appeal granted Smagin a stay of its August 2017 ruling, pending appeal to the Princely Supreme Court of Liechtenstein.

The parties dispute whether a turnover order under California law may properly reach assets such as those held in the Alpha Trust.  Under California law, a turnover order is a postjudgment creditor's remedy, available after a writ of execution is issued that directs the debtor to transfer specified property to a levying officer under penalty of contempt.  CAL. CIV. PROC. CODE § 699.040.  It is a broad remedy that can reach property under the control of the judgment debtor or a third party.  *Id.* § 699.080(a).  But California law excludes the interests of trust beneficiaries from execution.  *Id.* § 699.720 ("The interest of a trust beneficiary [is not] . . . subject to execution.").  Instead, California law provides for a specific mechanism, a § 709.010 petition, which can be used to seek enforcement of a judgment against a beneficiary's interest in a trust:

> [A] judgment debtor's interest as a beneficiary of a trust is subject to enforcement of a money judgment only upon petition under [§ 709.010] by a judgment creditor to a court having jurisdiction over administration of the trust.

*Id.* § 709.010(b).  "By its plain terms, the enforcement procedures of Code of Civil Procedure section 709.010 are the only means available for a judgment creditor to enforce a money judgment against [a beneficial] interest in a trust."  *FirstMerit Bank, N.A. v. Reese*, 242 Cal. App. 4th 408, 412 (Cal. Ct. App. 2015).  This is because "the [California] Legislature specifically excluded interest in a trust from levy by writ of execution."  *Id.*; *see also Pratt v. Ferguson*, 3 Cal. App. 5th 102,

8

116 (Cal. Ct. App. 2016) ("A lien on a judgment debtor's interest in a trust must be sought by means of a petition filed in the court having jurisdiction over administration of the trust."). The parties' litigating positions thus center on the question of whether Yegiazaryan's control over the Alpha Trust renders it outside the terms of § 709.010 and thus a proper subject of a turnover order.

We find a turnover order premature here, and we vacate the district court's order under principles of international comity, that is, "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Mujica v. AirScan Inc.*, 771 F.3d 580, 597 (9th Cir. 2014) (citation

omitted).[2] We exercise here "adjudicatory comity," that is, "discretion of a national court to decline to exercise jurisdiction over a case before it when that case is pending in a foreign court with proper jurisdiction." *Id.* at 599 (quotation omitted).

Smagin is correct that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, 9 U.S.C. § 201 ("New York Convention") does presuppose parallel enforcement proceedings globally. But here, the *remedial* measure ordered by the district court has precipitated the potential conflict, as it is premised on the district court's resolution of questions of Liechtenstein trust law that are currently pending review

---

[2] We choose not to rely on the doctrine of prior exclusive jurisdiction, *see Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466–68 (1939), because the turnover order mandated that Yegiazaryan take an action in his *personal* capacity on the basis of the court's in personam jurisdiction. Under the "mandatory" *Princess Lida* rule, *see Chapman v. Deutsche Bank Nat'l Trust Co.*, 651 F.3d 1039, 1044 (9th Cir. 2011), a court cannot take jurisdiction over a trust, over which a different court has already exercised jurisdiction. *See Princess Lida*, 305 U.S. at 466. Here, the Liechtenstein courts first asserted jurisdiction over the Alpha Trust in Feburary 2016 when Smagin brought suit in Liechtenstein, about six months before Smagin brought the Alpha Trust to the district court's attention. *See Penn General Cas. Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189, 196 (1935). But given the court's personal jurisdiction over Yegiazaryan, and given that he holds interests and performs functions vis-à-vis the Alpha Trust distinct from his interest as Beneficiary, we refrain from answering at this time whether Yegiazaryan can be ordered by turnover order to take some action in his capacity as Settlor, Protector, Asset Manager, or otherwise. *See, e.g., Knaefler v. Mack*, 680 F.2d 671, 675 (9th Cir. 1982).

by the Supreme Court of Liechtenstein. The Liechtenstein Supreme Court can be expected to resolve some if not all of the questions at issue in this case. Out of respect for the Liechtenstein Court of Justice's jurisdiction over the Alpha Trust in this case, and in consideration of the principles of legal pragmatism and efficiency embodied in international comity, we vacate the turnover order.

4.    Reassignment

We deny Yegiazaryan's request that the case be reassigned to a different district judge on remand, *see* 28 U.S.C. § 2106, as we find absent the "unusual circumstances" that merit reassignment. *Earp v. Cullen*, 623 F.3d 1065, 1071–72 (9th Cir. 2010); *United States v. Atondo-Santos*, 385 F.3d 1199, 1201 (9th Cir. 2004).

*    *    *

We vacate the award of attorneys' fees; we affirm the postjudgment injunction against Yegiazaryan; we vacate the turnover order; and we deny Yegiazaryan's request for reassignment on remand. The parties shall bear their own costs in these consolidated appeals.

**AFFIRMED** in part, **VACATED** in part, and **REMANDED**.

11